# A. GODCHAUX AND J. GODCHAUX *v.* D. L. MULFORD, *et als.*

STIPULATION WAIVING DEFECTS IN THE RECORD.—If the attorneys for appellant and respondent stipulate in writing that the statement contained in the record is a correct statement on motion for a new trial, and that the judgment roll, orders, and instructions, given and refused by the Court, the statement and stipulation constitute a true and correct statement on appeal to the Supreme Court, and may be used as such without further certificate or identification ; all technical objections to the transcript are waived, and it will be presumed that a notice of motion for a new trial was regularly given, although none appear in the record.

EMPLOYMENT OF VENDOR BY VENDEE AFTER SALE OF CHATTELS.—In case of a sale of goods and chattels, the subsequent employment of the vendor by the vendee, in the subordinate capacity of a clerk or salesman of the same goods, is not absolutely incompatible with an absolute and continued change of possession, and is not of itself, regardless of all other facts and circumstances, conclusive evidence of fraud. Such employment is a circumstance tending to show that there has not been such a change of possession as the statute requires ; but it is not *per se* a fraud which admits of no explanation.

SAME.—The vendor, if employed by the vendee as his clerk, cannot remain in the *apparently* sole possession of the goods after the sale ; but if it be apparent to all the world that he has ceased to be the owner, and that another has become such, and that he is only a subordinate or clerk, the rule requiring an actual and continued change of possession is satisfied.     ,

EVIDENCE OF EMPLOYMENT OF VENDOR BY VENDEE.—The employment of the vendor by the vendee after the sale, may be proved as a fact tending to show that there has been no actual or continued change of possession ; but when proved it does not become conclusive of the question, but only an element of proof to be weighed by the jury.

EMPLOYMENT OF VENDOR BY VENDEE AS CLERK.—After a sale of goods and chattels, and an actual change of possession, the employment of the vendor by the vendee, in the capacity of a clerk or salesman, is not, *per se*, a conclusive evidence of fraud which admits of no explanation.

CHANGE OF POSSESSION OF GOODS AND CHATTELS.—After a sale of goods and chattels in good faith, and an actual and notorious change of possession, the employment of the vendor by the vendee as a mere clerk or salesman is not a fraud which vitiates the sale because the change of possession is not continued.

MORTGAGE ON GOODS AND CHATTELS NOT VOID.—A mortgage upon *goods and chattels* designed to give a creditor a lien upon the same as security for the payment of his debt, although it necessarily creates a trust as to the surplus, yet the trust is not the object of the assignment, nor is it such a trust as renders the conveyance void as against subsequent creditors of the vendor.

ELEVENTH SECTION OF STATUTE OF FRAUDS.—The eleventh section of the Statute of Frauds does not apply to mortgages, whether they contain the usual defeasance upon their face and thus create an open trust, or exist in the form of an absolute conveyance, with an understanding that they are intended as mortgages and thus create a secret trust.

THE TRUST MEANT BY THE ELEVENTH SECTION OF STATUTE OF FRAUDS.—The trust mentioned in the eleventh section of the Statute of Frauds arises where the

debtor places his property in the hands of a trustee having no beneficial interest therein, to hold for his benefit solely, and enable him to receive and enjoy its income to the prejudice of his creditors.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The defendants recovered judgment in the Court below, and plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*Sloan & Provines,* for Appellants.

The charge in question leaves *fraud in fact,* as a matter of inquiry, entirely out of view.

It goes upon the hypothesis that the employment of the vendor by the vendee, in a subordinate capacity, is absolutely incompatible with a continued change of possession.

The hired clerk or salesman is no more in the possession of the goods of his employer than the hired laborer is in possession of the farm on which he is engaged at work.

Our statute, it is true, makes the want of an immediate delivery and continued change of possession conclusive evidence of fraud; but it introduces no new rule touching what shall constitute such delivery and change of possession.

The charge of the Court took from the jury the power to pass upon the question whether there had been an immediate delivery, followed by a continued change of possession. In *Warner* v. *Carlton,* 22 Ill. 424, this point was fully considered. There, it seems that in the Court below an instruction similar to the one under discussion had been applied for and refused. (*Vide,* to the same point, *Hall* v. *Wheeler,* 13 Ind. 371, 372; *Forsyth* v. *Mathews,* 2 Harr. 103; *Jordan* v. *Frink,* 3 Barr. 443, 444; *Ludlow* v. *Hurd,* 19 J. R. 220; *Weller* v. *Wayland,* 17 J. R. 102; *Brown* v. *Wilmerding,* 5 Duer, 225.)

The object and intent of the eleventh section of the Statute of Frauds cannot be mistaken. Its object is to prevent the debtor from placing his property in such position that he may enjoy the use of it at pleasure, to the prejudice of his credi-

tors. The intent is to prohibit the debtor from putting his estate to nurse in the hands of a trustee who has no beneficial interest therein, so that the debtor himself might take and appropriate to his own use the income of it. The statute does not prohibit the making of chattel mortgages, nor render such mortgages void because the mortgagee stipulates to do what the law would compel him to do, viz: to restore the surplus, after selling so much as shall be sufficient to discharge the debt. (*Margentham* v. *Harris*, 12 Cal. 245 ; *Abercrombie* v. *Bradford*, 16 Ala. 565 ; *Neally* v. *Ambrose*, 21 Pick. 18 ; *Stevens et al.* v. *Bell*, 6 Mass. 342 ; *Halsey* v. *Whitney*, 4 Mason, 222, 223 ; *Leith* v. *Hollister*, 4 Coms. 216.)

The same question was considered and determined in the New York Court of Appeals, in *Leith* v. *Hollister*, last above cited. It is there said : " The conveyance, whatever may be its form, is, in effect, a mortgage of the property transferred ; a trust as to the surplus results from the nature of the security, and is not the object or one of the objects of the assignment. Whether expressed in the instrument or left to implication is immaterial. The assignee does not acquire the entire legal and equitable interest in the property conveyed, subject to the trust, but a specific lien on it. The residuary interest of the assignor may, according to its nature or that of the property, be reached by execution or by bill in equity. The creditor attaches that interest as the property of the debtor, and is not obliged to postpone action until the determination of any trust. He is therefore neither delayed, hindered, or defrauded, in any legal sense."

In *Halsey* v. *Whitney*, 4 Mason, 222, Judge Story employs the same unanswerable reasoning. He says : "Another exception is, that there is a reservation of the ultimate surplus to the debtor, and this, it is contended, is fraudulent. But what is the nature of this surplus as it stands on the face of the assignment? It is not of any specific sum to the debtor, whether his debts are wholly paid or not ; but of such surplus only as shall remain after indemnifying and paying fully all the creditors who shall come in under the assignment. There is

no ground for saying that if all his debts were paid, the debtor may not honestly reserve the surplus to himself."

*George Cadwalader*, for Respondent, confined his argument to the motion to strike out the statement on motion for a new trial.

By the Court, SANDERSON, C. J.

Previous to the submission of this case upon its merits, counsel for respondents moved the Court to strike out the statement on motion for a new trial, upon the following grounds : First—Because no notice of plaintiffs' intention to move for a new trial was given.    Second—Because the statement does not specifically set forth the grounds of the motion. Third—Because the statement is not such a statement as the Practice Act contemplates, either on appeal  or on motion for new trial.

Whether any notice of motion for new trial was given does not appear, and the statement is somewhat contradictory and inartificial, but there is appended to it a stipulation made between the attorneys who tried the case in the Court below which we think is a complete answer to all the substantial objections made to the record.    The stipulation is signed by the attorneys of both parties, and is in the following words : " It is hereby stipulated by and between the attorneys for the plaintiffs and defendants, in the above entitled action that  the foregoing statement hereto annexed is a true and correct statement on motion for a new trial.    That upon said statement the said Court did, on  the first day of September, 1863, overrule the  plaintiffs' motion for a new trial and refuse to grant the said plaintiffs a new trial in said action, to which ruling the said plaintiffs then and there excepted.    And it is hereby further stipulated, that the judgment roll, orders and instructions, given and refused by the Court, the aforesaid statement on motion for a new trial, and this stipulation, is a true and correct statement on appeal to the Supreme Court, and may be used as such without further certificate or identification."

In the presence of the foregoing stipulation we will presume that notice of motion for a new trial was regularly given, and will further hold that all technical objections to the transcript are waived and the case submitted to us upon its merits. (*Weil* v. *Paul*, 22 Cal. 492.)

The plaintiffs sue the defendant, Mulford, late Sheriff of Calaveras County, and his sureties, for the alleged wrongful seizure and sale of certain goods belonging to them, under certain executions against one Kraft. The answer alleges that the goods so seized were the property of Kraft, and as such legally subject to the seizure and sale.

It appears from the evidence set forth in the statement that for some time anterior to the 16th of December, 1857, Kraft had been engaged in selling goods and merchandise at Mokelumne Hill, in Calaveras County, where he also resided with his family, his dwelling house being in the rear of the storeroom, toward the centre of the lot. On that day he made a sale of his goods and merchandise to plaintiffs, and a lease of the storeroom. A bill of sale of the goods and a lease of the tenement were executed in writing by Kraft and wife and delivered to plaintiffs at the same time. The validity of that sale seems to have been impeached on three different grounds:

First—That it was made with the intent to hinder, delay or defraud creditors, and therefore void under the provisions of section twenty of· the statute concerning fraudulent conveyances.

Second—That it was not accompanied by an immediate delivery, and followed by an actual and continued change of possession, as required by section fifteen of the statute.

Third—That it was made in trust, for the use of the vendor, Kraft, contrary to the provisions of section eleven.

Upon the close of the testimony both parties presented certain instructions, which they respectively requested the Court to give to the jury, some of which were given and others refused, the parties respectively duly excepting.

·It appears, from the evidence set forth in the statement, that the negotiations for the sale of the goods were closed on

the 16th of December, 1857, by the execution of a bill of sale and a lease of the storeroom. The door in the back end of the room, leading to the dwelling house of Kraft, was immediately closed up by nailing planks across it. Kraft's sign was removed, and that of Godchaux & Brother put over the front door of the storeroom. A person by the name of Blum, who seems to have had no connection with Kraft in any way, was employed by plaintiffs to take immediate possession for them. He did so take possession, and retain it until one Block was sent up by them from San Francisco, who remained there until the goods were seized by the Sheriff, in February, 1858. After the sale Kraft was absent some three weeks in San Francisco, but at the time of the levy by the Sheriff he, together with one of the plaintiffs and Block, was in the store and was engaged arranging goods in a show-case.

It also appears from the testimony of Kraft, who was examined as a witness by the defendants, that there were certain conditions in the sale from him to plaintiffs not expressed in the bill of sale, to the effect that after twenty-four hours he was to go back to the store and sell the goods in the plaintiffs' firm name, and the plaintiffs were to keep the stock up by furnishing fresh goods; that he was to draw seventy dollars per month for family expenses, and eight dollars per month to pay interest on money owed by him, and that the remainder was to be sent to the plaintiffs at San Francisco; that the business was to be carried on for his benefit, and in the meantime the plaintiffs were to buy up all his debts at as low a figure as possible, and that after all the debts had been bought up, and the plaintiffs had received their advances, the stock was to be restored to him.

It is conceded by counsel for the plaintiffs that the question as to a fraudulent intent between vendor and vendee, as matter of fact, under the provisions of section twenty of the Statute of Frauds, was fairly submitted to the jury by the instructions of the Court upon that point; but it is insisted that the jury was not correctly instructed touching the law as found in the eleventh and fifteenth sections of the statute.

The instructions which counsel claims are erroneous are as follows :

" If the jury believe from the evidence that Kraft was hired by the plaintiffs—Godchaux—and remained in possession of the goods he (Kraft) had sold to them as such hired man, the sale was void by the Statute of Frauds, aud the jury will find a verdict for the defendants."

" If the jury believe from the evidence that the plaintiffs agreed with Kraft to return the balance of the goods, or the money which they brought, after paying themselves for the money due them, it raises a secret trust in favor of Kraft and the contract was void, and they will find a verdict for the defendants."

" Though the sale be absolute in terms, yet, if the jury believe from the evidence that it was made with the understanding between Kraft and plaintiffs that it was only to operate as a mortgage, then it is a secret trust as to the surplus and is void as to the defendants, and the jury will find a verdict for the defendants."

The first of the foregoing instructions was designed to apply to the facts in evidence, and the law as found in the fifteenth section of the Statute of Frauds. (Wood's Digest, 107.) That section reads as follows :

" Every sale made by a vendor of goods and chattels, in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession of things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor or the creditors of the person making such assignment, or subsequent purchasers in good faith."

Whenever a case arises under the provisions of the foregoing section, the question of fact to be determined is, whether the evidence shows an immediate delivery and an actual and continued change of possession, as contradistinguished from a mere formal, or pretended and temporary one; and is to be determined, like any other question of fact, by an inspection

of all the circumstances of the case. The instruction under consideration was doubtless framed in view of the construction given to the statute in *Fitzgerald* v. *Gorham*, 4 Cal. 290, *Stewart* v. *Scannell*, 8. Cal. 80, and *Bacon* v. *Scannell*, 9 Cal. 271; but those cases were all substantially overruled by the case of *Stevens* v. *Irwin*, 15 Cal. 503, where, for the first time in this State, a true and rational exposition of the rule intended to be declared in the fifteenth section of our Statute of Frauds was given. In that case, after referring to the conflicting constructions by the Courts of the English and American Statutes of Frauds, some holding that a retention of the goods by the vendor was *per se* fraud, and others that it was only *prima facie* evidence of fraud, the former being the rule adopted by the Supreme Court of the United States, Mr. Justice Baldwin, delivering the opinion of the Court, said :

" In this controversy, as to what the true common law rule is, the Legislature wisely adopted, by statute, the construction given by the Supreme Court of the United States, for this course had at least the advantage of giving to the State one uniform rule in all Courts on this important subject. But we apprehend that the Legislature never intended, by this statute, to go beyond the extreme rule adopted by the Supreme Court of the United States, and the English cases on which that rule rests. There was no reason of policy for such extension; indeed, such extension might defeat, in some degree, the reason for adopting the Federal rule. The rule, as defined by our statute, is almost in the language of that given in the cases which establish the rule in England. It is true that some stress is laid on the words 'actual and continued change of possession,' but these words are suggested by the facts and principles of the decided cases referred to. The word 'actual' was designed to exclude the idea of a mere formal change of possession, and the word 'continued' to exclude the idea of a mere temporary change. But it never was the design of the statute to give such extension of meaning to this phrase, 'continued change of possession,' as to require, upon a penalty of a forfeiture of the goods, that the vendor should never have

any control over or use of them. This construction, if made without exception, would lead to very unjust and very absurd results. A vendor could never become trustee of the goods without their being forfeited or liable for his debts. If a livery stable keeper hired a horse to the original vendor, it would be liable for his debts; or if a boarder came into a room the furniture might be liable for his debts, if he once owned it. The 'continued change of possession,' then, does not mean a continuance for all time of this possession, or a perpetual exclusion of all use or control of the property by the original vendor. A reasonable construction must be given to this language, in analogy to the doctrines of the Courts holding the general principles transcribed into the statute. The delivery must be made of the property; the vendee must take the actual possession; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession must be continuous—not taken to be surrendered back again—not formal, but substantial. But it need not necessarily continue indefinitely, when it is *bona fide* and openly taken and is kept for such a length of time as to give general advertisement of the status of the property and the claim to it by the vendee."

Under the foregoing exposition of the statute (of the correctness of which we have no doubt,) the instruction of the Court in this case was undoubtedly erroneous, so far as it proceeds upon the theory that the employment of the vendor by the vendee in the subordinate capacity of a clerk or salesman is absolutely incompatible with an actual and continued change of possession, within the meaning of the statute; and that such employment is of itself, regardless of all the other facts and circumstances of the case, conclusive evidence of fraud. Such employment is undoubtedly a strong circumstance, tending to show that there has not been such an actual change as

the statute requires, but it is not *per se* a fraud which admits of no explanation.  As is well said by counsel for the plaintiffs : "A hired clerk or salesman is no more in the possession of the goods of his employer than a hired laborer is in possession of the farm on which he is employed at work."  The employment of the vendor in a subordinate capacity is colorable only and not conclusive upon the question as to whether there has been an immediate delivery and an actual change of the possession.  He cannot be allowed to remain in the apparently sole and exclusive possession of the goods after the sale, for that would be inconsistent with such an open and notorious delivery and actual change as the statute exacts in order to exclude from the transaction the idea of fraud.  But if it be apparent to all the world that he has ceased to be the owner, and another has acquired and openly occupied that position ; that he has ceased to be the principal in the charge and management of the concern and become only a subordinate, or clerk, the reason of the rule announced in the statute is satisfied.  The immediate delivery and actual and continued change of possession are the ultimate facts by which, according as they are present or absent, the statute determines the legal character of the sale ; but the instruction in question makes the bare employment of the vendor by the vendee in a subordinate capacity, regardless of the fact whether such subordinate capacity is open and notorious or not, the ultimate fact by which the statute determines the question of fraud ; whereas it is only a probative fact to be taken into account in determining the ultimate facts mentioned in the statute and by which the question of fraud is determined.  It was competent for the defendants to prove the fact as tending to show that there had been no actual and continued change of possession ; but when proved, it did not become conclusive of that question, as declared by the Court below, but only an element of proof to be weighed by the jury.  While our statute makes the want of an immediate delivery and an actual and continued change of possession conclusive evidence of fraud, it introduces no new rule as to what acts shall constitute such deliv-

ery and change of possession. As the case went to the jury they were only allowed to pass upon the question whether Kraft, the vendor, had been hired by the plaintiffs and allowed to remain in possession (not exclusive) of the goods as clerk. Such, as we have seen, is not the question which the statute submits to their determination. By this instruction the jury were precluded from finding as they might have done, in view of all the facts, that the delivery was immediate and the change of possession actual and continued.

Speaking of a similar instruction, in *Warner* v. *Carlton*, 22 Ill. 424, the Supreme Court of Illinois said :

"It is based upon the hypothesis that the vendee had no right to employ the vendor as a clerk to sell the goods in connection with others. There is no doubt that it is a circumstance to be considered on the question of fraud, but undoubtedly may be explained. It is not *per se* a fraud that admits of no explanation. If the vendor, after the sale, without a delivery of the goods, were to remain in the sole and exclusive possession, it would amount to a fraud in law ; but such is not the evidence in this case. No evidence showed that Carlton was in the sole and exclusive possession, but it tended to show that he was only acting as a clerk, and that Telfer was the person having charge of the concern and was the principal in its management. And, for aught that appears, the evidence may have been conclusive of that fact. This instruction, without modification, so as to leave it to the jury to determine from the evidence whether he had remained in the exclusive possession and control of the goods, without having ever delivered them to the purchaser, was erroneous and therefore properly refused."

That the two remaining instructions above quoted are erroneous does not admit of argument. If they declare the law correctly no mortgages of personal property can be legally made in this State, which we apprehend is not the case, for where the instrument is upon its face a mortgage, containing the usual defeasance, there is an open trust as to any excess ; and where it contains no defeasance, but is in fact intended as

a mortgage, there is a secret trust as to such excess, yet neither is within the Statute of Frauds. These instructions were doubtless intended to declare the law as found in the eleventh section of the Statute of Frauds, which reads as follows:

" All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same shall be void as against the creditors existing or subsequent of such person."

It is not the intention of the statute to prohibit chattel mortgages, but to prevent a debtor from placing his property in the hands of a trustee having no beneficial interest therein to hold for his benefit solely and enable him to receive and enjoy its income at pleasure, to the prejudice of his creditors. The language of the statute is, " made in trust for the use of the person making the same." These words are not descriptive of a mortgage contract. A trust as to the surplus necessarily arises in the case of a mortgage growing out of the nature of the contract, but such trust is not the object, nor one of the objects of the assignment. Its object is to give the creditor a lien as security for the payment of his debt, and it does not convey to him the legal title subject to a trust in favor of the mortgagor. The other creditors are not in any legal sense hindered or delayed or defrauded by the transaction. They may sue, notwithstanding, and reach the residuary interest of the mortgagor by attachment and execution, or by bill in equity, according to circumstances. (*Leitch* v. *Hollister*, 4 Coms. 216.)

We think all three of the instructions were erroneous, for the reasons which we have briefly given.

Judgment reversed and new trial ordered.


SAWYER, J., concurring.

The instruction to the effect that if the sale was understood between the parties to be only a mortgage, then there was a secret trust within the meaning of the Statute of Frauds, and

the sale was therefore void as to creditors, is clearly erroneous.
The first instruction discussed in the opinion of the Chief
Justice is, I think, as an abstract legal proposition, correct.
For, if Kraft remained in the "actual" possession as the hired
man of his vendee, such possession would "be conclusive evi-
dence of fraud, as against the creditors," even though such
actual possession would be constructively the possession of his
employer.    But if other parties were placed in the store, hav-
ing the direct charge and entire supervision and control of the
goods, and Kraft was only employed in a subordinate capacity
to assist in the sale of the goods, in the presence and under
the immediate supervision and control of others, this relation
would not necessarily constitute an actual possession in Kraft
within the meaning of the Act.    There is evidence tending to
show that this was the relation that Kraft sustained.    In view
of the state of the evidence, the instruction required some
qualification or explanation, otherwise the jury would be liable
to be misled by it.    The judgment should be reversed and a
new trial had.