## Case No. 2,518.

### CATLIN v. CURRIER.

[1 Sawy. 7.][1]

Circuit Court, D. Oregon. Jan. 17, 1870.

CHATTEL MORTGAGE — WHEN VOID — FORECLOSURE — RIGHTS OF THIRD PERSONS.

1. A mortgage of personal property, accompanied by an oral agreement or understanding between the parties thereto, that the property should remain in the possession of the mortgagor, and be disposed of by him in the course of his business, and the proceeds thereof applied to his own use, is a conveyance or assignment of such property in trust for the person making the same, and, therefore, void as against the creditors existing or subsequent of such mortgagor. Code Or. 655.

[Cited in Re Morrill, Case No. 9,821.]

2. A decree foreclosing a chattel mortgage does not affect the rights of third persons in the goods mentioned therein.

At law. This action was brought [by John Catlin, assignee of John A. Daly] to recover damages for the conversion by the defendant [William Currier], to his own use, of a stock of hats and hatter's tools, alleged to have belonged to the estate of Daly.

On the trial, the court, sitting without a jury, found the following facts:

1. That about the month of November, 1866, the defendant being then and ever since engaged in the business of a merchant tailor and clothier at number 103 Front street, Portland, formed a partnership with John A. Daly, a hatter, to carry on the hat business under the firm name of John A. Daly & Co., at the defendant's place of business aforesaid; and that the defendant, at the commencement of said partnership, advanced said firm the sum of $1,500 in gold coin; and on March 12, 1867, indorsed the note of the firm for the sum of $1,000 in gold coin, which he afterwards paid with interest to Ladd & Tilton, bankers, at Portland.

2. That Daly expended the $1,500 aforesaid, in the purchase of stock for the firm, and at the same time obtained about $2,500 worth of stock on credit, and that on December 24, 1867, said firm, by agreement of the parties thereto, was dissolved, and the stock of goods and fixtures on hand were turned over to Daly, who was to continue the business on his own account at the same place.

3. That the business of Daly & Co. yielded no profits, nor did the defendant receive any money from it as profits or otherwise, but that Daly during the existence of the firm drew out of the business from $50 to $75 per month for his support. That at the date of the dissolution aforesaid Daly & Co. were owing the defendant the sum of $2,546 in gold coin, for money advanced and paid by the defendant as aforesaid, for which sum Daly then gave his promissory note, payable on demand to the defendant or order, with interest at one per centum per month, to

secure the payment of which note, Daly at the same time executed a mortgage to the defendant upon the stock and fixtures of the hat business aforesaid, then being and to remain at 103 Front street aforesaid, with condition that the same should be void upon the payment of $2,546 in gold coin, on or before December 24, 1868, with interest at the rate of one per centum per month; that the mortgage further provided that if default should be made in the payment of the principal sum, or any installment of the interest thereon, then the mortgagee was empowered to take the goods into his possession and sell the same by due process of law, or by agreement of the parties, and out of the money arising therefrom to pay the debt, interest, charges, etc., and until default be made as aforesaid, the mortgagor, or his assignees, were to remain in the possession of the goods and in the full and free use and enjoyment of the same.

4. That the mortgage aforesaid was duly filed in the county clerk's office of the proper county on December 27, 1867, but no affidavit was ever made or filed by the mortgagee, therein setting forth his interest in the mortgaged property. That Daly made default and failed to pay the principal sum mentioned in such mortgage and the installments of interest thereon, or any part thereof, although requested so to do, whereupon the defendant on or about November 25, 1868, took possession of all the stock and fixtures then in the possession of Daly, at number 103 Front street aforesaid.

5. That at the execution of the mortgage aforesaid it was orally agreed and understood between the parties thereto, that, notwithstanding said mortgage, Daly might dispose of the stock of goods in the course of his business, and that any new or additional stock which Daly might purchase to supply the place of that so sold, should be bound by and included within the terms and operation of said mortgage, and that in pursuance of such oral agreement, Daly sold from the original stock and added thereto by purchase; that when the stock was turned over to Currier as aforesaid, there was remaining on hand of the goods mentioned in the mortgage what was equal in value to $700 in gold coin, and of the fixtures so mentioned, what was equal in value to $100 in gold coin, and of goods that had been added by Daly to the original mortgaged stock what was equal in value to $975 in gold coin.

6. That on December 19, 1868, Daly was, by the district court for the district aforesaid, duly adjudged a bankrupt upon the petition of his creditors, and that on January 13, 1869, the plaintiff, being then duly qualified as assignee of the estate of the said Daly, duly demanded of the defendant the property above mentioned, whereupon the defendant delivered to the plaintiff all that part of the goods in his possession which had been purchased by Daly since the execution

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

of the mortgage; but as to the goods and fixtures then in his possession, and included and mentioned in' said mortgage, the same being of the value of $800 in gold coin, the defendant refused to deliver the same to the plaintiff, but retained the same as his own property, under and by virtue of the mortgage, and the default of Daly in not performing the conditions therein.

7. That the defendant withdrew from the firm of Daly & Co. and transferred his interest in the stock and fixtures thereof, and received the mortgage as aforesaid, without any fraudulent intent, and without any intent to hinder, delay or defraud the creditors of him, the said Daly, but for the purpose of protecting his own interest and securing his debt.

8. That on December 1, 1868, defendant commenced a suit in the circuit court, for the county of Multnomah, to foreclose the mortgage aforesaid, and that on January 2, 1869, for want of an answer by the only defendant in said suit, the said Daly, said circuit court adjudged and decreed among other things, that the lien of said mortgage be foreclosed, and that the property mentioned therein be sold as by law provided, to satisfy the debt aforesaid, due from said Daly to said Currier, but that no sale appears to have been made of such property or any part thereof, by virtue of or in pursuance of such decree or otherwise.

9. That the decree aforesaid recites that the summons and copy of the complaint in such suit had been duly served upon the defendant therein, and that the time for answering such complaint had expired, whereas it appears from the original summons in such suit that the same was served by a person specially appointed by the proper sheriff to serve the same; but that the return of such person as to making such service is not proven by his affidavit, or otherwise than by his mere certificate.

And the court being then unadvised as to what conclusion of law should be drawn from the premises, directed the matter to be argued by counsel, after which the following conclusions of law were found:

1. That the writing executed by Daly on December 24, 1867, purporting to be a mortgage of a certain stock of goods and fixtures to the defendant herein, taken in connection with the contemporaneous oral agreement of said Daly and defendant as set forth in the findings of fact aforesaid, was and is a valid mortgage of said fixtures, but was and is not a mortgage of said stock of goods, but a conveyance or assignment by said Daly of the same to said defendant, in trust for the use and benefit of said Daly, and therefore was and is void and of no effect, as to said stock of goods, as against the plaintiff herein.

2. That the goods and fixtures aforesaid never having been seized or sold under the decree purporting to foreclose the mortgage thereon, the title thereto nor the rights of the parties to this action, therein, were and are in no way affected thereby, and therefore it is immaterial whether such decree was given before or after the commencement of the proceedings in bankruptcy against Daly, or whether or not the same is void for want of a sufficient proof of the service of the summons upon said Daly, or whether or not the same was obtained after the demand of the plaintiff herein for the possession of the property.

3. That the defendant herein, wrongfully converted to his own use the goods aforesaid of the value of $700, aforesaid, by refusing to deliver the same to the plaintiff herein when duly demanded thereto, wherefore the plaintiff is entitled to recover of and from said defendant the value of said goods so converted to his own use as aforesaid.

J. W. Whalley, and M. W. Fechheimer, for plaintiff.

Lansing Stout and John H. Reed, for defendant.

DEADY, District Judge. The material question in this case is involved in the first conclusion of law stated in the findings of the court. Is the writing executed by Daly to the defendant, purporting to mortgage to the latter certain goods, when taken in connection with the contemporaneous oral agreement and understanding of the parties, a simple mortgage or a conveyance or transfer of the property in question, in trust, for the use and benefit of Daly, and therefore void as against creditors?

This question does not arise under any provision of the bankrupt act. While there is some reason for supposing that Daly was insolvent when he executed the so-called mortgage to the defendant, yet there is nothing in the case to show that he owed any other debts than the one due the defendant. Under these circumstances, even if Daly was insolvent, it could not be said that the writing was either executed or received, with an intention to give or receive a preference, or to hinder or delay existing creditors, or to evade or defeat any provisions of the bankrupt act [14 Stat. 534].

The question therefore turns upon the statute of the state and the general principles of law applicable to such a transaction. By the former it is declared that a mortgage of personal property unaccompanied by immediate possession creates a disputable presumption of fraud as against the creditors of the mortgagor, unless the same is duly filed or recorded as provided by law (Code Or. 339); and also that all conveyances and transfers of goods and chattels, in trust for the person making the same, shall be void as against the creditors, existing or subsequent, of such person (Id. 655).

A chattel mortgage is a pledge of personal property as a security for the performance of some act—such as the payment of an existing debt. The law allows the property

pledged to remain in the possession of the mortgagor if the mortgage is put on record as notice to the world. But if the mortgage be also coupled with a condition or agreement that the mortgagor may treat the goods as if he were the owner of them—may sell them at his option and receive the proceeds to his own use—such condition or agreement avoids the mortgage. The two cannot stand together. Such use of the mortgaged property by the mortgagor is utterly inconsistent with the idea of giving a pledge or security to the mortgagee. In legal effect it is a sham, a nullity—a mere shadow of a mortgage, only calculated to ward off other creditors—a conveyance in trust for the benefit of the person making it, and therefore void as against creditors.

In this case, it is shown by the finding of the court (and the testimony of the defendant was clear and unequivocal upon that point) that by the understanding between the defendant and Daly, the latter was to continue, not only in the possession of the goods, but to sell and dispose of them in the course of his business, at his option, and take the proceeds to his own use—and so he did with the knowledge and consent of the defendant until the defendant took possession near the close of the year 1868. As against the other creditors of the bankrupt, the defendant cannot claim anything in this property by such a transaction. In re Manly [Case No. 9,031], decided by Mr. Justice Leavitt of the southern district of Ohio, is a case on all fours with the one under consideration, and there the mortgage was held void as to creditors.

The case of Godchaux v. Mulford, 26 Cal. 316, cited by counsel for defendant, is not in point. In that case it was held, that in all mortgages of goods and chattels, whether accompanied by possession or not, there is a trust created in favor of the mortgagor, as to the surplus, if any, and that the statute of frauds which declares all transfers of goods made in trust for the party making the same, to be void as to creditors, does not apply to such a trust. That the trust as to the surplus is not the object of the transfer, but a mere incident, and does not bring the transaction within the purview of the statute. But in the case at bar, the trust created was something more than a mere legal implication that the surplus, if any, after paying the debt of the defendant, should be held by him for the benefit of Daly. As has been shown, it was an express agreement that notwithstanding the mortgage to the defendant, Daly might proceed to dispose of the goods as his own and receive the proceeds to his own use. This was an express trust in favor of Daly, as to all the mortgaged goods, which rendered the mortgage itself totally inoperative, so long as the goods were allowed to remain in Daly's possession. As the mortgage became forfeited within a month from its execution, for the want of payment of the first installment of interest on the debt, it was in

the power of the defendant to have terminated this trust at any time thereafter, by taking the goods into his own possession. But he saw proper to leave them with Daly, with the power to use and dispose of them as his own, and now the law and good morals agree that the defendant should not be preferred to other creditors, who, it may be, trusted Daly upon the faith of this unqualified possession and apparent absolute ownership.

But it is said by the counsel for defendant, that the question of "fraudulent intent" under the statute is a question of fact (Code Or. 657), and that, as the court has found as a matter of fact that the defendant acted in the premises without any intent to defraud any one, the only conclusion of law proper to be drawn from the facts is in favor of the validity of the mortgage.

This argument, it seems to me, is based upon two erroneous assumptions. First, that the fraudulent intent of which the statute speaks as sufficient to avoid a mortgage is, in any case, the intent of the mortgagee; and, second, that the question of "fraudulent intent" is involved in this case at all.

The "fradulent intent" which by section 52 of the chapter on conveyances (Code Or. 657) is made a question of fact in all cases arising under titles 2, 3, and 4 of that chapter, is the intent of the grantor or vendor, and not that of the grantee or vendee. It is not found in this case whether Daly, the alleged mortgagor, acted in good faith or not. It is possible that he acted in bad faith, notwithstanding the defendant acted in good faith. But the fact is not material. Nor does section 52 of the chapter on conveyances include the provision of the statute (Code Or. 339) which furnishes the special rule as to when a sale or assignment or mortgage of personal property is to be deemed fraudulent and void as to creditors, because not accompanied by an immediate delivery and a continued change of possession.

As to the second error of the argument under consideration, it is sufficient to say, that such a mortgage or conveyance as this—a conveyance in trust for the party making it—is declared void as to creditors, as a matter of public policy, without reference to the intent of the parties thereto. The law assumes absolutely, and beyond doubt correctly, that in no circumstances can such a transaction be upheld in justice to creditors. That is this case, and whatever may have been the intention of the parties, the law for the protection of the general creditors of the debtor, declares the so-called mortgage void, because made in trust for Daly.

As to the second conclusion of law, the matter seems too plain for argument. The decree foreclosing the mortgage, at most only extinguished the right of redemption as between Daly and the defendant. There was no seizure or sale of the goods under the decree, and beyond extinguishing the

right of redemption, as stated, it had no effect upon the property in the goods, even between the mortgagor and mortgagee. But more than that, the plaintiff was not a party to this decree and the writing upon which it is based, however valid between the parties to it, is void as to the general creditors whom he represents.

There must be a judgment for the plaintiff for the value of the goods.