## FREEMAN v. HENSLEY, Sheriff.

### No. 14,741; August 17, 1892.

30 Pac. 792.

**Sale—Change of Possession—Evidence.**—In an action of claim and delivery against a sheriff for seven horses taken on attachment against plaintiff's vendor, it appeared that the sale to plaintiff was bona fide, and that there was an "immediate delivery." The evidence showed that soon after the delivery plaintiff employed a man who had been in the service of his vendor, and put him in charge of the horses; that with six of them in a team he and said vendor, with a like team, did a large amount of plowing for a third person; that while doing the plowing one of the horses of plaintiff's team was exchanged, for convenience in working, for one of the horses of his vendor's team.

Held, that the evidence supported the finding that there was an "actual and continued change of possession" following the sale of the property to plaintiff.

Sale—Change of Possession—Evidence.—In such case, evidence as to whom credit was given for the plowing done by plaintiff's team is immaterial, in the absence of an offer to show that the credit was given by his direction.

Sale—Change of Possession—Evidence.—In such case, a witness having testified in chief that he never heard the vendor, during a certain time, make any statement as to the ownership of the property, it was proper to ask him, on cross-examination, if the vendor did not, in a particular conversation during that time, tell him the horses belonged to plaintiff.

APPEAL from Superior Court, Fresno County; M. K. Harris, Judge.

Action by John Freeman against John M. Hensley, as sheriff, to recover possession of personal property. From a judgment for plaintiff, defendant appeals. Affirmed.

Church & Cory for appellant; Van Meter & Warlow for respondent.

HAYNES, C.—This action, in claim and delivery, was brought by respondent to recover certain horses. The horses in question formerly belonged to one Porter, and were purchased from him by Freeman, October 12, 1889, and were afterward, on October 24, 1889, attached by defendant, as sheriff, as the property of Porter in an action brought by Patterson against Porter and Schell. It is conceded by appellant that there was no actual fraud in the sale of the horses by Porter to Freeman, but he contends that there was no immediate delivery of the property to Freeman, and that the sale was not followed by an actual and continued change of possession, as required by section 3440 of the Civil Code. The cause was tried by the court, and findings and judgment went for plaintiff; and, defendant's motion for a new trial having been denied, he appeals from the order denying it.

What constitutes an "immediate delivery" and an "actual and continued change of possession" is held to be a question of fact to be determined by the court upon the evidence presented in each particular case: Godchaux v. Mulford, 26

Cal. 322, 85 Am. Dec. 178; Claudius v. Aguirre, 89 Cal., at page 503, 26 Pac. 1078. In the latter case it was said: "The circumstances connected with a transfer of personal property are so varied that it would be impossible to frame a rule applicable to each case, or to determine in advance what acts would be sufficient to meet the requirements of the statute." The obvious correctness of this statement precludes any very material assistance either to the trial court or this court from adjudicated cases. There was no conflict in the testimony relied upon to show an immediate delivery of the property by Porter to Freeman. The bargain was made in the evening, the consideration being partly an indebtedness of Porter to Freeman, and the remainder was paid in cash by Freeman. The property consisted of seven horses, harness, and wagon. The next morning Porter took Freeman to the corral, and said to him, "There are your horses; there they are." Freeman and one Strimbeck, who was then boarding with him, took charge of the horses, fed and watered and harnessed them, and Porter executed a bill of sale of the property to Freeman. After this Porter informed Freeman that he had promised one Fletcher to furnish two teams, of six horses each, and a man to drive one of the teams, to do certain plowing for Fletcher, and that Fletcher was to pay $69 per month for the team and a man, and asked Freeman if he would let the team go to do that work. Freeman replied that he wanted the team to work, and that if he could get Strimbeck to drive it he would send the team. Freeman thereupon hired Strimbeck, at $30 per month, to drive the team, and put him in charge of it. Porter also got a man and took another team of six horses, and both teams went to Fletcher's. Fletcher not being ready to commence plowing, the teams were put in pasture at Fletcher's for some days, after which plowing commenced, when Strimbeck took charge of and drove Freeman's team. Some testimony on the part of appellant tended to show that, after plowing commenced, changes were made of horses from one team to the other, so that they became mixed, some of Porter's horses being in Strimbeck's team and some of Strimbeck's in Porter's. It was testified by respondent's witnesses that one of Strimbeck's horses was too slow for his mate, and one of the horses in the other team was too fast for his mate, and these two were changed for

the purpose of making them work better, and this change continued until Porter's team was attached, when they were changed back, and respondent's horses continued in Strimbeck's charge for some days, when they were also attached as the property of Porter. For some time after the two teams went to Fletcher's, he (Fletcher) did not know of any change of ownership, but later, and before the property in question was attached, respondent personally informed him of his ownership, and that Strimbeck was in his employ, and in response to a question as to whether the foreman might discharge Strimbeck respondent said, ''No; when the man I put in charge don't suit, send stock and all in.''

The principal conflict in the evidence as to the manner in which the teams were used at Fletcher's was in regard to changing horses from one team to another. There was no conflict in the evidence touching the employment of Strimbeck by respondent, nor that he was put in charge of respondent's horses, nor that Porter did not ask or receive any compensation from Fletcher for the services of Strimbeck or the team driven by him. Little weight should be attached to the fact that prior to this transaction Strimbeck had worked for Porter, and had driven horses owned by Porter and Schell, including the horses in controversy. He had, however, been out of Porter's employment for some weeks, and during that time was boarding with respondent. The team did not remain at Porter's, nor was Strimbeck under the control or direction of Porter, but was under the immediate control and direction of Mr. White, the foreman of Mr. Fletcher. I think there was nothing in the temporary change of horses from one team to another, for reasons which probably made each more effective, which should be held to destroy the continuity of the change of possession, especially where it is conceded that the sale was not fraudulent, and where the immediate delivery of the property to respondent was satisfactorily shown; for while it may be true that the burden of showing the actual and continued change of possession was on the plaintiff, and that showing such immediate delivery does not prove the continuance of the change of possession, it nevertheless reflects a light in which the after treatment of the property may properly be viewed by the court. The court did not err in sustaining plaintiff's objection to the ques-

tion put by defendant to his witness Fletcher, viz., "To whom did you give credit for the $69?" Obviously Fletcher's act could not affect the possession of Freeman or of Porter as a question of fact, nor be evidence of possession in the one or the other, unless made by their direction, and there was no offer to prove such direction. The question put to the witness White by plaintiff upon cross-examination was proper. The witness had testified in chief that he never heard Porter make any statement with regard to the ownership of the property while he was out there. The question on cross-examination called the witness' attention to a particular conversation, when it was asked if Porter did not tell him the team belonged to Freeman. After a careful examination of the evidence, I am of opinion that the court did not abuse its discretion in denying the motion for new trial; and advise that the order appealed from be affirmed.

We concur: Temple, C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order is affirmed.