[No. 1817]

F. P. HOFFMAN, RESPONDENT, v. J. J. OWENS, SHERIFF OF NYE COUNTY, AND A. J. POMMER COMPANY, APPELLANTS.

1. APPEAL AND ERROR—UNDERTAKING ON APPEAL—WAIVER.

Under the civil practice act, sec. 341 (Comp. Laws, 3436), providing that to render an appeal effectual an undertaking shall be executed, and upon the authority of *Marx* v. *Lewis*, 24 Nev. 306, an undertaking cannot be waived by stipulation.

## ON REHEARING

1. APPEAL AND ERROR—UNDERTAKING ON APPEAL—WAIVER.

Under the civil practice act, sec. 348 (Comp. Laws, 3443), providing that the undertaking may be waived by the written consent of the respondent, and Comp. Laws, 2621, providing that an attorney may bind his client in any of the steps of the action by his agreement filed with the clerk, an undertaking on appeal is not essential where the attorney for respondent entered into a written stipulation waiving an undertaking; such stipulation being filed with the clerk. (*Marx* v. *Lewis*, 24 Nev. 306, reversed.)

2. FRAUDULENT CONVEYANCES—CHANGE OF POSSESSION—SUFFICIENCY.

The object of Comp. Laws, 2703, providing that every sale, unless accompanied by an immediate delivery, and followed by an actual and continued change of possession, shall be conclusive evidence of fraud as against creditors, is the prevention of fraud, and what will amount to change of possession within the statute must be determined in each case, having relation to the character and situation of the property at the time of sale.

3. FRAUDULENT CONVEYANCES—CHANGE OF POSSESSION—POSSESSION OF FORMER OWNER AS EMPLOYEE OF GRANTEE.

A saloon keeper sold his business and liquors to his brother in payment of a prior debt, and executed a bill of sale, which was properly recorded. The brother took possession, and continued the business as before. Both worked a shift as bartenders substantially as before, with the exception that the brother acted as proprietor and the other worked on a salary. The saloon sign, containing only the surname, was not changed. Business houses and customers were notified of the change. Neither the lease on the premises nor the license was transferred. *Held*, that the sale was not fraudulent in law, within Comp. Laws, 2703, providing that every sale unless accompanied by an immediate delivery, followed by an actual and continued change of possession, shall be conclusive evidence of fraud as against creditors, as the possession of the buyer was not a concurrent or joint possession with the seller, but was exclusive.

4. APPEAL AND ERROR—FRAUDULENT TRANSFER—QUESTION FOR THE TRIAL COURT.

Whether a sale was fraudulent in fact as against creditors of the seller is for the trial court to determine.

VOL. XXXI—31

APPEAL from the District Court of the Fifth Judicial District of the State of Nevada, Nye County; *J. P. O'Brien*, Judge.

Action by F. P. Hoffman against J. J. Owens, Sheriff of Nye County, and another. From a judgment in favor of plaintiff, defendants appeal. **Dismissed. On rehearing. Former opinion overruled, and judgment and order affirmed.**

The facts sufficiently appear in the opinion.

*P. E. Keeler*, for Appellants:

I. Since there was no such change of possession as the statute contemplates, the conveyance was void and the property remained subject to attachment by the creditors of J. H. Hoffman. (*Goard* v. *Gunn*, 29 Pac. 918; *Cook* v. *Rockford*, 12 Pac. 568; *Goldstein* v. *Nunan*, 6 Pac. 451; *Allen* v. *Massey*, 17 Wall. 351; *Lloyd* v. *Williams*, 40 Pac. 243; *Stevens* v. *Irwin*, 15 Cal. 503; *Grady* v. *Baker*, 19 N. W. 417; 24 Cent. Digest, cols. 608, 714, sec. 481.) Recording of bill of sale is not a substitute for change of possession. (*Bassinger* v. *Spangler*, 10 Pac. 813; *Kuydendall* v. *McDonald*, 57 Am. Dec. 212.) If the vendor remains in possession as agent, it is not such actual change of possession as the law contemplates. (*Grant* v. *Lewis*, 80 Am. Dec. 785; *Rothgerber* v. *Gough*, 52 Ill. 436; *Young* v. *Youngman*, 25 Pac. 209; *Steinburger* v. *Schulin*, 45 Mo. 521.)

II. The possession must be exclusive and the change such as to give evidence to the world of the claims of the new owner. (*Gray* v. *Sullivan*, 10 Nev. 429; *Ewing* v. *Merkley*, 4 Pac. 248; *Stevens* v. *Irwin*, 15 Cal. 503; *Bassinger* v. *Spangler*, 10 Pac. 813.) The delivery of the bill of sale was not even symbolic delivery of the personalty. (*Comaita* v. *Kyle*, 19 Nev. 38.)

III. Plaintiff must recover on the strength of his own title and must show a valid sale by a preponderance of the evidence. (*Gallick* v. *Bordeaux*, 78 Pac. 583.)

*L. A. Gibbons*, for Respondent.

By the Court, NORCROSS, C. J.:

The record on appeal in this cause does not contain an undertaking on appeal, but, in lieu thereof, counsel for the

respective parties have stipulated "that the giving of an undertaking on appeal by the defendants and appellants in the above-entitled action be, and the same is hereby, waived, and the said appeal may be considered and heard by the Supreme Court of the State of Nevada in all respects as if an undertaking on appeal had been duly filed." Section 341 of the civil practice act (Comp. Laws, 3436) provides: "To render an appeal effectual for any purpose, in any case, a written undertaking shall be executed on the part of the appellant by at least two sureties," etc.

In the case of Marx v. Lewis, 24 Nev. 306, this court specifically held that an undertaking on appeal could not be waived. We quote from the opinion in that case the following excerpt: "The method of procedure in taking appeals is regulated by statutes. Section 327 of the civil practice act (Comp. Laws, 3422) in direct terms confers authority upon this court to review judgments and orders from which appeals can be taken in the manner prescribed in the act, 'and not otherwise.' * * * Under the language used in these sections we have no power or authority to review any question presented in this record. The attempt to stipulate a waiver of the notice and undertaking can be of no effect, for the reason that such attempt is doing that which the statute says cannot be done. The language used 'and not otherwise,' precluded the intention of conferring authority to review appeals under such stipulation as completely as it would were such intention expressed in direct terms. The same may be said of the language used in section 341, supra, requiring the undertaking to 'render an appeal effectual for any purpose.'"

Authorities may be found that an undertaking upon appeal may be waived, and a number of these so holding are cited in the prevailing opinion in the case of Smith v. Wells Estate Co., 29 Nev. 411, 416. Whether or not any of the authorities cited are opposed to the decision of the question heretofore rendered by this court would depend upon the provisions of the statute controlling in the particular case. Authorities also exist taking the same position as the Marx v. Lewis case, supra; for example, the case of Santom v. Ballard, 133 Mass. 464. The court is inclined to the view that a more liberal

rule in matters pertaining to perfecting appeals would be advantageous, but we are not at liberty, in view of the statute, to declare such rule, especially so, after this court has construed the statute in question as it did in the *Marx* v. *Lewis* case. If the statute in this respect is more strict than it ought to be, the remedy is with the legislature.

For the reasons given, the appeal is dismissed.

SWEENEY, J.: I concur.

TALBOT, J., concurring:

With some reluctance I concur in the judgment, for the reason that this court so construed the law in the case of *Marx* v. *Lewis*, 24 Nev. 306.

The construction given follows more strictly the letter than the spirit of the practice act. In using language stating that an appeal shall not be effective for any purpose unless an undertaking is given, the legislature evidently wished to protect the respondent in the recovery of his costs if the appellant was unsuccessful on the appeal. By the use of this language it is doubtful if the lawmakers had any intention or purpose of preventing a respondent from waiving the provision, which was inserted for his benefit, and especially so when proper effect is given to section 71 (Comp. Laws, 3166), which provides that "the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the parties."

Clearly it was intended to give the respondent the right to insist upon being protected by a bond on every appeal, but no good reason appears to me why he may not waive this provision for his benefit. A waiver might be of material advantage to the appellant, and save him the inconvenience of furnishing an undertaking, and at the same time work no injury to the respondent, if he is satisfied that the appellant is able financially to meet any judgment which may be rendered or affirmed against him by the appellate court. Although having high regard for the great learning and ability of the Supreme Court of Massachusetts, I am unable to see the weight of the conclusion reached in the case cited from that

state, holding that the failure to require an undertaking might lead to frivolous appeals, nor that the most meritorious cases could not be appealed without the requirement of an undertaking, if waived, while the most frivolous may be appealed by giving a small bond. As held by this and other courts, appeals will be dismissed where there is no real controversy between the parties. Apparently that court modified its views in a later case, and held that a motion to dismiss an appeal upon the ground that no bond to the adverse party had been filed as required by the statute came too late after the first term. (*Wheeler & Wilson M. Co.* v. *Burlingham*, 137 Mass. 581.)

So far as I am aware, an appeal bond is required in all the state and appellate courts. Nevertheless, it has often been held that the undertaking and other requirements may be waived. The word "waiver" implies that something may be relinquished.

In *Kingsbury* v. *Buckner*, 134 U. S. 681, 10 Sup. Ct. 648 (33 L. Ed. 1047), the court said: "It is further contended that the Supreme Court of Illinois could not entertain the appeal from the decree dismissing the cross-bill of Buckner and wife without an appeal bond being executed by them, and that it was not competent for Beckwith to waive the giving of such bond. * * * A mere failure to execute the bond within due time may be ground for dismissing an appeal, but does not deprive the court of the right to proceed to a determination of the appeal. So here, the waiver by the infant's guardian *ad litem* and next friend of a bond by Buckner and his wife upon their appeal—the latter having waived an appeal bond on his part—did not affect the jurisdiction of the court. And such is the rule of practice in the Supreme Court of the United States. (*Edmonson* v. *Bloomshire*, 7 Wall. 306, 311, 19 L. Ed. 91; *Richardson* v. *Green*, 130 U. S. 104, 114, 9 Sup. Ct. 443, 32 L. Ed. 872; *Evans* v. *State Bank*, 134 U. S. 330, 10 Sup. Ct. 493, 33 L. Ed. 917.) The cases cited by counsel from the latter court do not announce any different rule."

In *Dillinghan* v. *Skein*, Fed. Cas. No. 3,912a, Hempst. 181, it was said: "The parties having appeared before that court, and the appellee making no objection that an appeal bond

had not been given, thereby waived it; and the absence of an appeal bond in no manner affected the jurisdiction of the court."

It was held in *Ross* v. *Tedder*, 10 Ga. 426, that it was competent for the parties to appeal by consent without giving a bond, and in *Gardner* v. *Investment Co.*, 129 Cal. 528, 62 Pac. 110, that by joining in a stipulation for additional time defects in a single undertaking given on two distinct appeals were waived.

In *Weidner* v. *Matthews*, 11 Pa. 336, *Norris* v. *Monroe*, 128 Mass. 386, and *Engle* v. *Rowan* (Tex. Civ. App.) 48 S. W. 757, it was held that objections to recognizance on appeal must be taken within a reasonable time or they will be considered as waived.

In my judgment, if the question were before this court for the first time, a construction opposite to the one given in *Marx* v. *Lewis, supra*, ought to be applied, but under the circumstances it would be better for the legislature to amend the statute.

## On Rehearing

By the Court, Norcross, C. J.:

Following the prior decision of this court in *Marx* v. *Lewis*, 24 Nev. 306, this appeal was dismissed upon the ground that an undertaking on appeal was an essential statutory requisite to invest this court with jurisdiction, and that such undertaking could not be waived. Upon our attention being called on petition for a rehearing to the fact that all of the statutory provisions having a bearing upon the question were not referred to or considered in the *Marx* v. *Lewis* case, *supra*, a rehearing was granted. By section 348 of the civil practice act (Comp. Laws, 3443) it is provided that "in all cases the undertaking or deposit may be waived by the written consent of the respondent." This important provision of the statute appears clearly to have been inadvertently overlooked both by the court and counsel in the *Marx* v. *Lewis* case. Section 10 of "An act relative to attorneys and counselors at law" (Comp. Laws, 2621) provides: "An attorney and counselor shall have authority: First—To bind his client in any of the steps of an action or proceeding, by his agreement filed with

the clerk, or entered upon the minutes of the court, and not otherwise." Where the attorney for the respondent enters into a written stipulation waiving an undertaking on appeal and such stipulation is filed with the clerk, it is a compliance with the provisions of the statute. In so far as the opinion in the *Marx* v. *Lewis* case holds that an undertaking on appeal cannot be waived, it is overruled. Likewise the opinion heretofore rendered in this case.

This is an appeal from the decision and judgment in favor of the plaintiff, respondent herein, and from an order denying defendants' (appellants herein) motion for a new trial. The only point urged upon the appeal is that the decision and judgment of the trial court is not supported by the evidence. This action is in claim and delivery to recover the possession of certain personal property consisting of a stock of wines, liquors, and cigars, bar fixtures, and certain other saloon furnishings. The property in question was attached by the said sheriff of Nye County as the property of J. H. Hoffman, a brother of the respondent herein, in an action instituted by the appellant A. J. Pommer Company, against the said J. H. Hoffman and two others on the 8th day of February, 1907. Proof was offered to the effect that on the 21st day of January, 1907, the said J. H. Hoffman executed and delivered to the plaintiff a bill of sale of the property in question, together with the saloon business conducted by him, and known as "The Hoffman," and an automobile, in payment and extinguishment of a prior existing debt in the sum of $5,250 owed by him to the plaintiff. The said bill of sale was thereupon filed for record and recorded in the office of the county recorder of Nye County at the town of Tonopah, where the property was situated "and the record in the recorder's office published in the paper."

After the making of the bill of sale, the plaintiff took possession and conducted the saloon business in substantially the same manner as his brother had previously conducted it. Both Hoffmans worked a shift as bartenders substantially as they had done before the execution of the bill of sale, with the exception that the respondent acted as proprietor and J. H. Hoffman worked upon salary. The only sign about the

saloon before the transfer was the words "The Hoffman," and
this was not changed.   Neither of the brothers had ever had
their name used otherwise about the premises, either before or
after the sale.   The business houses and persons from whom
supplies for the saloon had been purchased were notified when
they presented their bills that the saloon business had changed
hands, and that the plaintiff was the owner, and would be
responsible for debts in the future.   Customers of the place
coming in were also informed of the transfer.   It was also
brought out in the testimony of J. H. Hoffman that at the
time of the execution of the bill of sale that he did not make
any transfer of his lease upon the premises, nor was any
change made in the county license.   He testified that he did
not consider it necessary to transfer the lease, and that in
reference to the license that he did not know until afterwards
that the saloon could not legally be conducted under the
quarterly license taken out by him the 1st of January, and
explained that former purchasers of the saloon prior to him-
self had continued to do business under the prior existing
license.

The action brought by A. J. Pommer Company, against
J. H. Hoffman, was for an indebtedness contracted by the
latter's wife while engaged in conducting a music store in
Tonopah.   Both the plaintiff and the said J. H. Hoffman
testified that at the time of the transfer they were unaware
of such indebtedness, and that the sale and transfer of the
property in question was not made to hinder, delay, or
defraud any creditors of either J. H. Hoffman or his wife.

It is contended by appellant that the evidence was insuf-
ficient to establish a valid sale of the property in controversy
as against the creditors of J. H. Hoffman under the statute of
frauds.   Section 64 of an act concerning conveyances (Comp.
Laws, 2703) provides: "Every sale made by a vendor of goods
and chattels in his possession or under his control, and every
assignment of goods and chattels, unless the same be accom-
panied by an immediate delivery, and be followed by an
actual and continued change of possession of things sold or
assigned, shall be conclusive evidence of fraud, as against the

creditors of the person making such assignment, or subsequent purchasers in good faith."

This court in *Tognini* v. *Kyle*, 17 Nev. 209, 212, 45 Am. Rep. 442, said: "In sales of personal property the statute requires that it must be taken into the actual possession of the vendee in order to be operative against the creditors of the vendor. This requirement of the statute is based upon the principle that permitting the former owner to remain in the apparent ownership of the property may be the means of giving him a false credit. There is no difficulty in the application of the statute to sales of personal property capable of actual delivery, as, for instance, in the case of the sale of a few bushels of charcoal, but the application of the statute to sales of cumbrous property, such as twelve thousand bushels of charcoal, has been fruitful of litigation. What will amount to a change of possession sufficient to satisfy the requirements of the statute in one case will fall short of its demands in another. Each case must be decided with relation to the character and situation of the property at the time of the sale." The object of the section of the statute, *supra*, is "the prevention of frauds which would necessarily result from the practice of permitting the right of property to be in one person and the possession and all the *indicia* of the right of property being in another." (*Doak* v. *Brubaker*, 1 Nev. 221; *Wilson* v. *Hill*, 17 Nev. 406.)

This case was tried before the court without a jury. No specific findings of fact were filed in the case, but the following appears in the written opinion of the trial judge: "The evidence in this case shows that the sale was made in good faith and without any intention to hinder or defraud any of the creditors of J. H. Hoffman, and particularly the A. J. Pommer Company. Indeed, the evidence shows that neither the plaintiff nor J. H. Hoffman knew of the existence of the claim of the Pommer Company; the fact being that the account accrued for musical instruments and goods sold and delivered to the wife of J. H. Hoffman. If J. H. Hoffman had sold the property described in the complaint to some person other than his brother in payment of a debt amounting to

the value of the property, and if such person had taken pos-
session thereof before the levy of attachment, without notice
of the existence of the claim of the attaching creditor, it could
not be seriously contended that the vendee was not a pur-
chaser in good faith, and that he would not be protected
against the creditors of J. H. Hoffman. Does the fact that
the transfer was made to the brother of the vendor change the
rule, all of the other facts being the same? Manifestly not.
The fact that J. H. Hoffman and F. P. Hoffman are brothers
and that the bill of sale was given in extinguishment of an
antecedent debt are circumstances that might create a sus-
picion as to the good faith of the transfer, still these circum-
stances are not sufficient to overcome the direct and positive
testimony of the two Hoffmans that the sale was made in good
faith and free from fraud, and that there was an immediate
delivery and an actual and continued change of possession.
It will be observed that absolutely no testimony whatever was
offered by the defendants to contradict or impeach the testi-
mony of the Hoffmans, or to show that the plaintiff was not a
purchaser in good faith, and that the provisions of the statute
requiring a delivery and change of possession had not been
complied with. The most that can be said in support of the
defendants' contention is that these circumstances cast a cloud
and suspicion upon the transfer. It is an inflexible rule of
law that fraud cannot be assumed, but must be established
by clear, convincing and unequivocal proof. The testimony
offered in behalf of the plaintiff, it seems to me, cannot be
overcome by suspicions, surmises, or inferences, however cun-
ningly awakened or eloquently depicted. When the attach-
ment was levied in the Pommer suit, the plaintiff herein filed
his claim of ownership with the sheriff, as required by law,
and the want of delivery and the question of the good faith of
the transfer were submitted to a sheriff's jury. This jury
decided in favor of the plaintiff in this case. The verdict of
the jury in that case must have been based upon the convic-
tion in the mind of the jury that the sale was made in good
faith, and that there was an immediate delivery and an actual
and continued change of possession. While the conclusion
of the jury in that proceeding is not binding upon the court

in this case, still it shows how the jury regarded the weight of the evidence offered in support of these questions."

The only question which might be regarded as at all serious in this case is whether it could be said that the possession of the respondent vendee was a concurrent or joint possession with the vendor and not exclusive as required by the statute. (20 Cyc. 541.)

This court by Hawley, C. J., in the case of *Gray* v. *Sullivan*, 10 Nev. 416, 424, said: "It is well settled that the employment of the vendor in a subordinate capacity is only colorable, and not conclusive, evidence of fraud. (*Godchaux* v. *Mulford*, 26 Cal. 324; *Billingsley* v. *White*, 59 Pa. 466.) Certainly no stronger rule ought to be adopted against the employment of the mere servant of the vendor. The court, in *Godchaux* v. *Mulford*, discussing the question of the employment of the vendor, said: 'It was competent for the defendants to prove the fact as tending to show that there had been no actual and continued change of possession; but, when proved, it did not become conclusive of that question, * * * but only an element of proof to be weighed by the jury.' "

See, also, the case of *McKibbin* v. *Martin*, 64 Pa. 352, 3 Am. Rep. 588, cited with approval in *Tognini* v. *Kyle*, *supra*.

In the McKibbin case, the court, by Sharswood, J., said: "The law undoubtedly is that not only must possession be taken by the vendee, but that possession must be exclusive of the vendor. A concurrent possession will not do. 'There cannot in such case,' said Mr. Justice Duncan, 'be a concurrent possession. It must be exclusive, or it would by the policy of the law be deemed colorable.' (*Clow* v. *Woods*, 5 Serg. & R. 287, 9 Am. Dec. 346.) And, again, in *Babb* v. *Clemson*, 10 Serg. & R. 428, 13 Am. Dec. 684: 'There cannot be a concurrent possession in the assignor and assignees. It must be exclusive, or it is deemed colorable and fraudulent. To defeat the execution, there must have been a *bona fide* substantial change of possession. It is mere mockery to put in another person to keep possession jointly with the former owner. A concurrent possession with the assignor is colorable.' But what is the concurrent possession which will be deemed such as matter of law? Evidently as owner, or accompanied with

the ordinary *indicia* of ownership—such as will lead any person not in the secret to infer that there has been no actual change. The vendor must appear to occupy the same relation to the property as he did before. In such a case the court must pronounce it fraudulent and colorable *per se*. * * * Certainly it may be considered as settled by abundant authority in this court that where there has been a sufficient actual or constructive delivery to the vendee, and he is in possession, the fact that the vendor is employed as a clerk or a servant about the establishment, in a capacity which holds out no *indicium* of ownership, does not constitute such a concurrent possession as the law condemns. In such cases it is a question for the jury whether the change or possession has been actual and *bona fide*—not pretended, deceptive, and collusive. If there are facts tending to show that he had a beneficial interest in the business; that the proceeds of it went to him beyond a reasonable compensation for his services; that he had an unlimited power to draw upon the till; or that with the knowledge of the vendee he took money to pay his own debts—these are facts for the jury. * * * In *Billingsley* v. *White*, 59 Pa. 464, two partners sold out a store of goods to the brother of one of them. One of the vendors continued in the store as a hired hand. 'If,' said Mr. Justice Williams, 'Billingsley's acts and declarations as a salesman had been such as to leave it doubtful whether he was acting as owner or agent, then his presence and connection with the goods would have been such evidence of retained possession as to render the sale fraudulent. But if his acts and declarations were professedly and apparently those of a mere agent, and were so understood by the parties with whom he dealt, as all the evidence tends to show, then they constituted no such badge of fraud or evidence of retained possession as would justify the court in declaring the sale fraudulent.' "

It cannot, we think, be said from the facts in this case that the sale was fraudulent in law. It was the province of the trial court to determine whether it was fraudulent in fact.

The judgment and order appealed from are affirmed.