$$\begin{array}{rr} 28 & 13 \\ 85 & 250 \\ \hline 28 & 13 \\ 115 & 48 \end{array}$$

## JERRY FORD *v.* R. C. CHAMBERS.

ACTUAL AND CONTINUED CHANGE OF POSSESSION OF GOODS SOLD.—If a merchant, having a stock of goods in his store, and engaged in a retail trade, with clerks in his employ, makes a sale in good faith of his entire stock in trade to a creditor in payment of the indebtedness, and for a fair price, and the creditor immediately goes into the store, takes entire control of the business, and proceeds to take an inventory, and also to retail the goods to customers with the assistance of the clerks of the vendor, this constitutes an actual and continued change of possession, and the sale is valid as against the creditors of the vendor, although there has been no formal discharge of the clerks of the vendor and rehiring of them by the vendee, and the vendor continues to occupy a room in the upper part of the store where he had previously slept. '

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The Court below found the following facts :

" 1. That on the first day of November, 1859, William Ford was doing business as a merchant at Quincy, and had been so doing business for more than a year before that time. That the stock in such business consisted of goods, wares, and

merchandise usually kept in a store in the country. That he had several clerks in his employ in his business.

" 2. That at that time he was indebted to Jerry Ford, the plaintiff in this suit, and 'his brother, about the sum of ten thousand dollars.

" 3. That on the 28th of October, 1859, Arrington & Co. obtained a judgment against said William Ford for $5,063 09, in this Court, for goods before that date sold to said William Ford.

" 4. That on the first day of November, 1859, an execution was issued upon the said judgment and immediately forwarded to R. C. Chambers, the defendant in this action, and then Sheriff of Plumas County.

" 5. That on the first day of November, 1859, the said Jerry Ford arrived at Quincy from San Francisco, and said William Ford agreed to sell to the said Jerry Ford his entire stock of goods, and the amount thereof to be credited upon the debt which William Ford then owed Jerry Ford.

" 6. That Jerry Ford and William Ford's clerks, then in the store, proceeded to take an inventory of the stock of goods in the said store, and so continued from day to day until the morning of the 5th of November, 1859, and the amount of such inventory was charged in the books of William Ford to Jerry Ford.

" 7. That the evidence of the indebtedness from William Ford to Jerry Ford was an entry of such debt in the said books of William Ford, and the amount of the said inventory was entered in the same books as so much paid upon said debt.

" 8. Within two hours after the inventory was made, and the entry of the amount thereof was made in the books as aforesaid, the defendant as Sheriff, with the aforesaid execution, entered the said store and levied upon the entire stock therein and proceeded to take an inventory thereof, and did make an inventory of the same and took them into his custody as such Sheriff, and in the month of December following sold the same under said execution.

" 9. That a portion of the goods levied upon were in a warehouse about one hundred and twenty-five feet from the principal storehouse.

" 10. That during the time of the taking of the inventory by the said Jerry Ford and clerks the goods remained in the said store the same as before, and a portion of them were sold by Jerry Ford and the clerks during that time and up to the time of the levy of the defendant.

" 11. During this time, and for some days previous to that time, William Ford was sick in the upper part of said store, which part had been and then was occupied by the said William Ford and the said clerks as sleeping apartments, the entrance to which was by a stairway outside and apart from said storehouse, through a woodshed.

" 12. That during the time of the taking of said inventory, and up to the time of the said levy, the said Jerry Ford was there present in the store, giving directions as to the goods, and was selling goods to customers as they called for that purpose.

" 13. On the 5th of November, 1859, the said William Ford gave the said Jerry Ford a lease of the said store, dated the 2d day of November, 1859, and it was so dated to correspond with the time of the taking of the inventory under the contract of sale from William Ford to Jerry Ford.

" 14. The clerks in the store at the time of taking the inventory and of the levy were the same clerks in the employ of William Ford on and before the 1st day of November, 1859, and it does not appear that there was any specific hiring or employing of said clerks by Jerry Ford before the levy.

" 15. William Ford had a small sign over the door of the said store, upon which was the name 'Ford,' and said sign continued over said door without any alteration up to the time of the said levy.

" 16. That after said levy by the said defendant, he (the defendant) rented from Jerry Ford the said warehouse to store the said goods on which he had so levied and taken under the said execution.

"17. That at the time of the said levy, the said Jerry Ford gave the defendant notice that he was the owner of the goods, and forbid him from taking the same under said execution.

"18. The inventory of that portion of the goods in the warehouse was completed, and the amount thereof entered in the books of William Ford before the defendant levied upon such portion; and that such portion of goods in said warehouse thus seized were worth at the time of the levy at Quincy $2,440, and the whole store of goods so taken and sold by the said Sheriff were, at wholesale price, at said Quincy, of the value of $6,000 at the time of said levy."

The Court also found as conclusions of law:

"That there was no immediate delivery nor actual or continued change of possession of the said goods from the said William Ford to the said Jerry Ford, and that the said sale as to the creditors of the said William Ford was fraudulent and void, and that the defendant is entitled to judgment."

Defendant recovered judgment in the Court below, and plaintiff appealed from an order denying a new trial and from the judgment.

This case was before the Supreme Court at the October term, 1861, and is reported in the 19 Cal. 144.

*E. D. Wheeler* for Appellant.

The sale of the stock of merchandise from William Ford to Jerry Ford, was a legal and valid sale, and vested the title in the plaintiff:

1st. Because there is neither proof nor pretence of actual fraud.

2d. The delivery was immediate, and the change of possession actual and continued. (*Stevens* v. *Irwin*, 15 Cal. 503; *Lay* v. *Neville*, 25 Cal. 545; *Godchaux* v. *Mulford*, 26 Cal. 316.)

3d. Plaintiff had no knowledge of Arrington & Company's claim, nor of the issuance of the execution. But even if

plaintiff knew, at the time he purchased from William Ford, that there was an execution in the officer's hands against the property of his vendor, it did not render the transaction fraudulent. (*Wheaton* v. *Neville*, 19 Cal. 41.)

The Statute of Frauds, like all other statutes, must be reasonably construed; and we are not aware that any especial sanctity attaches to that statute, or that it is obligatory on the Courts of the land to give to it a more strict or literal construction than belongs in common to the various legislative enactments standing upon our statute books. It was virtually held at one time by the Supreme Court of this State, that the "immediate delivery" required by the statute, meant an almost *instantaneous* delivery; but subsequently it was determined that the character of the property sold, its situation, and all the attendant circumstances should be taken into consideration in determining whether the delivery had been made within a reasonable time or not. And again, it was held that the "continued change" of possession required by statute, in reality meant an unbroken and *perpetual* change of possession; but this Court subsequently held that the terms "actual and continued" were used merely in contradistinction to the terms *formal* and *temporary;* and that even though the chattel sold should at some future time revert, temporarily, to the hands of the vendor, yet it would not, while thus in his hands, be subject to seizure for his debts, provided the vendee, pursuant to his purchase, had possessed it long enough to satisfy a reasonable mind of the *bona fides* of the transaction. (16 Cal. 503.)

*J. P. Hoge,* and *H. H. Haight,* for Respondent.

This Court is so familiar with the authorities upon this subject that we propose to dismiss them with a very brief review.

And one remark is to be made here, that the late cases modify the earlier ones to this extent only, that the employment of the vendor by the vendee after a lapse of a longer or

shorter time is not a fact of such a controlling character as of itself to make the sale void against creditors. This, we understand, is the only respect in which the earlier cases in this State are modified, and this modification has no bearing upon the case at bar.

The case of *Stevens* v. *Irwin,* 15 Cal. 503, in which the modification above referred to was first made, was a case in which the vendee had been in possession more than a year, and the vendor then went into his employ. This was very properly held not fatal; but in that very case Judge Baldwin lays it down that the change of possession must be open and unequivocal, carrying with it the usual marks of change of ownership, so as to give evidence to the world of the claims of the new owner.

The delivery and change of possession need not have consumed more than twenty minutes. The amount of credit to be given was to be arrived at by computation after taking an inventory, and was not an essential part of the delivery or change of possession. If the credit were not entered for six months, or not at all, it would not affect the delivery and change of possession if that were in compliance with the statute.

Instead, however, of making an immediate delivery and actual change of possession, there was, after the lapse of four days, no change whatever, much less that actual change which Courts have over and over again declared to signify open, public, unequivocal, and notorious. (*Struper* v. *Echart,* 2 Wharton, 303; *Jarvis* v. *Davis,* 14 B. Monroe, 529; *McBride* v. *McClelland,* 6 Watts & Sergt. 95.)

By the Court, Sawyer, J.

The main question in this case is, as to whether there was an immediate delivery of the stock of goods to plaintiff, Jerry Ford, before the levy of defendant, within the meaning of the fifteenth section of the Statute of Frauds, so as to render the sale valid as against creditors. We are satisfied that there

was, and that the conclusion of law drawn by the Judge below from the facts found is, in this respect, erroneous. We have carefully examined the evidence, and think it fully sustains the facts found by the Court, and that in some respects the facts might have been properly stated still more strongly in favor of the plaintiff.

It is clear to our minds, from the findings, and also from the evidence, that, from the time of the arrival of Jerry Ford at Quincy, he took the entire management and control of the goods. William was not about the store, and gave no direction, except when the inventory was footed up and taken to his room up stairs, he directed the amount to be charged to Jerry on his books. The Court find the bargain to have been made on the arrival of Jerry. Jerry from that time went on with the inventory in connection with the clerks, assumed the direction of matters in the store, and sold goods to customers— the memoranda of sales being kept during the taking of the inventory on loose papers. The inventory was leisurely taken, occupying from the first till the morning of the fifth of November, and was fully completed, and the amount charged over to Jerry Ford, on the books of William, some two hours before the levy by the Sheriff. The goods were taken, so far as they went, in satisfaction of a debt of long standing found to be due Jerry Ford for goods sold to William—said sum appearing as a credit in favor of Jerry, on the books of William Ford. A lease of the store was also executed and delivered on the morning of the fifth, before the arrival of the Sheriff, as shown by the uncontradicted testimony of the witnesses, dated as of the second—the day that Jerry took charge. True, there had been no formal discharge and rehiring of the clerks, but they manifestly acted under the orders of Jerry, and William never came into the store, or interfered in any way after the arrival of Jerry, till he was called down at the instance of the Sheriff at the time he came to make the levy. Unquestionably, as between William and Jerry Ford, the title had passed, and had the goods been destroyed by fire at the moment of the levy, the loss would have fallen on the vendee; and we think

the conclusion to be drawn from the facts found, and from the testimony, equally clear, that the actual possession had passed to Jerry Ford, and that the goods were under his actual personal control as early as the second of November, and from that time till the levy. The sale had been made, the control of the store had passed to Jerry on the second of November, and it only remained to complete the inventory and ascertain the amount to be charged over, and this was fully completed and the entries made upon the books of William Ford before the defendant commenced his levy. We are fully satisfied that the judgment is erroneous. The only doubt we entertain is, as to what judgment should be entered. The facts are very fully found, and regarding the final conclusion in the finding, as a conclusion of law drawn from the facts found—the light in which the Judge below considered it—we think it erroneous, and the conclusion should have been, that there was an actual delivery, and continued change of possession sufficient to satisfy the Statute of Frauds, and that the sale was valid as against the creditors of William Ford. And we do not see how any other result could be arrived at, on the testimony, if a new trial were had. This case was tried once before by a jury, and the verdict was in favor of the plaintiff. But our predecessors reversed the judgment for error in one of the instructions. The instruction was, doubtless, erroneous, and the judgment properly reversed for that reason, yet we think it not very likely that the verdict was really affected by the error. The Justice who delivered the opinion, while he expressly disclaimed any intention to decide the matter, remarked that " upon reviewing the testimony in the case, we are strongly inclined to the opinion, that there was no such actual delivery of the goods proved as made the contract between William Ford and Jerry Ford complete as against the former's creditors." It is highly probable that this suggestion influenced the learned Judge who tried the case below, in deducing his conclusion from the facts found. But whatever may have been the evidence adduced on the first trial, we are satisfied that upon the evidence now presented by the

Opinion of the Court.

record, and upon the specific facts found, there was such an actual change of possession as to render the sale valid as against the other creditors of William Ford.

Upon the whole we think the plaintiff should have had judgment upon the facts found, and clearly so upon the evidence.

Ordered, that the judgment be reversed, and the District Court be directed to enter judgment in favor of the plaintiff for the sum of six thousand dollars, and interest from November 5th, 1859, at the rate of ten per cent per annum and costs of suit, and that appellant recover his costs on appeal.

Mr. Justice CURREY being disqualified did not participate in the decision of this case.