## HOWARD V. DWIGHT.

1. Evidence that from the date of the alleged sale of a store, with its stock of goods, to plaintiff (who did not personally take possession), up to the time the goods were attached by a creditor of the vendor, the same manager and clerks remained in charge; that the vendor's name during this period remained on the window shades and in the newspaper advertisements; and that bills were made out to him, and paid by the manager, without objection—sufficiently shows that there was no "immediate delivery, followed by an actual and continued change of possession,"

within Comp. Laws, Sec. 4657, without which the transfer is conclusively presumed to be fraudulent.

2. Where an officer justifies a seizure of goods under a writ of attachment valid on its face, the recitals of indebtedness in the affidavit, or in the complaint annexed and made a part thereof, are *prima facie* evidence of such indebtedness.

(Opinion filed April 7, 1896.)

Appeal from circuit court, Davison county.    Hon. D. HANEY, Judge.

Action for damages for the conversion of personal property.    Defendant had judgment, and from the judgment and an order denying his motion for a new trial, plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*Frank A. Luse, C. J. Hute, A. E. Hitchcock*, for appellant.

If the property was in the possession of a third party, and the third party agreed to hold it for the purchaser, the delivery was complete.    Williams v. Lerch, 56 Cal. 330; Means v. Williams, 37 Me. 556; Walden v. Murdock, 23 Cal. 540; Barry v. Brown, 2 Vt. 374; Montgomery v. Hunt, 5 Cal. 366; Gardick v. Bowers, 4 Pac. 1138; Bellingely v. White, 59 Pa. St. 464.    See, also, Lathrop v. Clayton, 47 N. W. 549; Tunell v. Larson, 39 N. W. 628; Bump on Fraud. Conv. 198.    The affidavit was insufficient for the issuance of a warrant of attachment. Mathews v. Densmore, 5 N. W. 669.

*French & Orvis*, for respondent.

The undisputed evidence failed to show a delivery and such an actual and continuous change of possession of the goods as required by the statutes of this state.    Longley v. Daley, 1 S. D. 257; Grady v. Baker, 3 Dak. 396; Engles v. Marshal, 19 Cal. 329; Godchaux v. Mulford, 26 Cal. 326; Woods v. Bugbey, 29 Cal. 472; Lay v. Neyville, 25 Cal. 553; Allen v. Massey, 17 Wall. 353; Claflin v. Rosenberg, 42 Mo. 439.    See, also, Burchinell v. Weinberger, 34 Pac. 911; Sweeney v. Coe, 21 Pac. 705; Cook v. Mann, 6 Colo. 21; Bassinger v. Spangler, 10 Pac. 809; Wilcox v. Jackson, 4 Pac. 969; Lawrence v. Burnham, 4 Nev. 361; Brown v. Kimmel, 67 Mo. 430,

CORSON, P. J.   The plaintiff sued to recover damages for the seizure and conversion of a stock of goods of which plaintiff claimed to be owner.   Judgment for defendant, and from the judgment and an order denying a motion for a new trial the plaintiff appeals.

Prior to February 6, 1893, the National Union Company carried on the mercantile business, by means of some 40 or 50 stores located in different states, conducted by managers, who received a salary and percentage of the profits.   Several of the stores were located in this state, and among them was one at Mitchell and one at Vermillion.   At about the last-mentioned date, the National Union Company, as it is claimed, sold out its various stores to the plaintiff.   The business of the plaintiff in the West seems to have been placed under the management of one Drakely, who had previously been the business manager of the National Union Company, and through him a new contract was entered into between the plaintiff and one Van Horn, of Mitchell, who had formerly acted as the local manager of the National Union Company.   One Gadd Peterson acted as the local manager of the said corporation at Vermillion.   In the latter part of February, 1893, said Peterson, claiming that there was due him $2,979.91, from said company, commenced an action against said company, and caused a warrant of attachment to be issued, and the stock of goods in the Vermillion store to be seized, and subsequently sold, leaving a balance unpaid of $1,053.21, for which a second action was commenced, on June 21, 1893, and a warrant of attachment issued, by virtue of which the stock of goods in the Mitchell store, under the management of said Van Horn, was seized and taken into the possession of the defendant as sheriff, and for which alleged seizure this action was instituted.   At the close of all the evidence the plaintiff moved the court to direct a verdict in his favor for the value of the goods seized, upon the ground that there was no evidence upon the part of the defendant that there was an indebtedness in favor of Peterson, and no evi-

dence that there was not an immediate delivery and actual and continuous change of possession. This motion was denied, and the plaintiff accepted. Thereupon the defendant moved the court to direct a verdict in his favor, on the ground that the undisputed evidence showed that there was no such immediate delivery and actual and continued change of possession of the property involved in this action, and attempted to be transferred, as is contemplated by Sec. 4657, Comp. Laws. This motion was granted, and the plaintiff duly excepted. We are of the opinion that plaintiff's motion for the direction of a verdict was properly denied; but, in the view we take of the case, it will not be necessary to discuss at length the plaintiff's motion, as that will necessarily be disposed of by the decision upon the motion made by the defendant, which was granted by the court.

The only questions necessary to be determined are: First. Was there sufficient evidence of an immediate delivery, and actual and continued change of possession as to require the case to be submitted to a jury? Second. Was there sufficient undisputed evidence to warrant the court, as matter of law, in holding that the National Union Company was indebted to Peterson at the time his warrant of attachment was issued?

Section 4657, Comp. Laws, upon the subject of fraudulent conveyances, reads as follows: "Every transfer of personal property, other than a thing in action, * * * is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void, against those who are his creditors, while he remains in possession. * * *" This section (Sec. 2024 of the Civil Code) has settled for this state the question that has given rise to much discussion and innumerable decisions, namely, the good faith and *bona fides* of the transaction, by making the presumption conlusive that the transfer is fraudulent and void unless there is an immediate delivery, followed by

an actual and continued change of possession. The delivery and change of possession contemplated by the provisions of this section must, to a considerable extent, be governed by the nature of the property transferred, and the circumstances surrounding the parties (Tunell v. Larson [Minn.] 39 N. W. 628); but ordinarily the acts showing a change must be so open and manifest as to make the change of possession apparent and visible. The acts should clearly show the vendor's intention to part with the possession of the property, and to transfer it to the vendee. Such acts are required as will notify the public generally that there has been a change in the ownership of the property. In the language of Mr. Justice FIELD, in Allen v. Massey, 17 Wall. 351, "the possession which the purchaser was required to take of the property sold, in order to render the sale valid under the statute, must be open, notorious, an unequivocal, such as would inform the public or those who were accustomed to deal with the party that the property had changed hands, and that the title had passed from the vendor to the purchaser." Longley v. Daly, 1 S. D. 257, 46 N. W. 247; Claflin v. Rosenberg, 42 Mo. 439; Grady v. Baker, 3 Dak. 296, 19 N. W. 417; Woods v. Bugbey, 29 Cal. 467; Godchaux v. Mulford, 26 Cal. 316; Engles v. Marshall, 19 Cal. 320; Sweeney v. Coe, 12 Colo. 485, 21 Pac. 705; Bassinger v. Spangler, 9 Colo. 175, 10 Pac. 809; Burchinell v. Weinberger, 4 Colo. App. 6, 34 Pac. 911.

In the case at bar the undisputed evidence shows that subsequent to February 6th when the sale from the National Union Company to the plaintiff is claimed to have been made, and up to June, when the warrant of attachment was served, the same manager and clerks remained in charge of the same store with the same stock of goods, and the the sign of the National Union Company on the front window curtain; that the same stationery was used, with the name of the company printed thereon; that the advertisement in the paper, as late as June 29th, called particular attention to the fact of the "National Union Com-

pany's" store; and that bills to that company were made out
and paid by the manager without objection. The defendant,
who was sheriff of the county, testified that he was a resident
of the city of Mitchell, and was familiar with the store, both
before and after February 6th; and that he never saw anything
to indicate any change of the possession or ownership of the
store; and that he did not know at the time he served his war-
rant of attachment that there had been any change in the owner-
ship.    The plaintiff proved that Van Horn went to Chicago late
in February, and saw Drakely, who was formerly the general
manager of the National Union Company, and who then claimed
to be the manager for the plaintiff, and made a new contract
with him in the name of the plaintiff; and that, on his return
from Chicago, he called on Peterson, the manager of the Ver-
million store, and plaintiff in the action in which the attach-
ment was issued, and informed him what he had done, and re-
quested him to go to Chicago and make a similar contract,
which he declined to do.    It does not appear that Van Horn in-
formed any other person of this contract or sale from the Na-
tional Union Company to the plaintiff.    There was therefore no
evidence of any open or manifest change of possession, and no
evidence of any continued change of possession.    Possibly,
Van Horn could have properly been retained as manager, and
the same clerks retained, if there had been sufficient other evi-
dence to show that there had been an immediate delivery, fol-
lowed by an actual and continued change of possession.    But
there was no such evidence. Van Horn, notwithstanding his
new contract with Drakely, assuming to act for the plaintiff,
seemed to have continued to act as the agent of the National
Union Company up to the time of the service of the warrant of
attachment, so far as his ostensible management of the busi-
ness was concerned; and his notices in the newspapers were
made solely in the interest of the old company.

The learned counsel for the appellant has called to our at-
tention several cases in which they claim the facts were simi-

lar, and the delivery and change of possession were held suffi-
cient. But an examination of these cases shows they are not
analogous to the case at bar. In Ford v. Chambers, 28 Cal. 13,
the purchaser of a stock of goods went into the store, took pos-
session, took an invoice in connection with the clerk of the
vendor, and "assumed the direction of matters in the store and
sold goods to customers." The inventory was completed before
the goods were seized by the sheriff. The purchaser took a
new lease of the store, and the vendor had nothing to do with
the goods after the purchaser took possession. The court held
that the mere fact that the purchaser did not discharge the
clerks in the employ of the vendor, and re-employ them, was
not sufficient to prove that there was not an immediate delivery
and continued change of possession, evidenced by his other
acts. As the case of Billingsley v. White, 59 Pa. St. 464, seems
to be a leading case upon this subject, we quote at some length
from the opinion of the court: "In the case before us the evi-
dence of the sale and actual delivery of the goods was positive
and uncontradicted. The vendors, Billingsley & Patterson,
were engaged in mercantile business in Cookstown; and on the
17th of March, 1867, they sold their stock of goods to the plain-
tiff, and on the 9th of March, after the completion of the in-
voice, they delivered to him the possession. * * * Notice
of sale and change of possession was given by advertisements
put up on the door of the store, and in at least two other pub-
lic places in the town or borough; and personal notice thereof
was given to all creditors of the firm in Pittsburg. Immedi-
ately after the sale the plaintiff took possession of the store,
and began to conduct the business in his own name and on his
own account, and continued to carry it on for a period of ten
months, when, in January, 1868, the sheriff seized and sold his
stock of goods upon the defendant's execution as the property
of Billingsley & Patterson. There was positive evidence that
the advertisements giving notice of the sale were seen and
read, and that it was known that the plaintiff was carrying on

the business. The fair and reasonable inference from all the evidence is that the sale was well known in the community, and that the customers of the firm, who dealt with the plaintiff after the sale, knew that he was carrying on the business in his own name, and apparently on his own account. There was not a particle of evidence tending to show that either Billingsley or Patterson, after the sale to the plaintiff, ever bought or sold any goods, or did any other act professedly or apparently in the name of the firm, or that either of them had any connection with the plaintiff's business, except as his agent or employe. Patterson rented a field and went to farming; but because he sold a few goods in the store after the sale to the plaintiff, and Billingsley acted as plaintiff's clerk or salesman under a contract of hiring, the court declared there was no such evidence of delivery or change of possession as the law requires in order to render the sale valid as against creditors. Do these circumstances, then, in connection with the other facts of the case, constitute such a badge of fraud or evidence of retained possession as to render the sale fraudulent in law? They would undoubtedly, be sufficient to avoid the sale if they had the effect of rendering the possession of the plaintiff doubtful or ambiguous. But, if they did not, why should the sale be declared fraudulent? If no one was misled or deceived by the conduct of the parties, if their relations to each other and to the goods in question were well understood by those who dealt with them after the sale, and if their acts and declarations accompanying and following the delivery furnish such evidences of an apparent and actual change of possession as to satisfy the community, why should not these evidences be sufficient to satisfy the requirements of the law?" It will be observed that the purchaser in that case took actual possession of the goods, and gave such notices and so conducted the business thereafter that it was clearly obvious to all that there had been a change in the ownership and possession of the property. These cases sufficiently illustrate the marked difference in the facts in the

cases cited by appellant's counsel from those in the case at bar. The court was, in our opinion, fully justified in holding that, from the undisputed evidence, there was no such immediate delivery and actual and continued change of possession as is contemplated by the provisions of the section quoted. Was there sufficient undisputed evidence to warrant the court in holding, as matter of law, that Peterson, the attaching creditor was such creditor of the National Union Company at the time the warrant of attachment was served? The defendant sought to prove this indebtedness by an account stated in November, 1892, between Peterson and the company; but this statement was stricken out by the court, for reasons not necessary now to be stated. It was also sought to prove this indebtedness by the affidavit for the attachment and judgment; but, in the view we take of the case, the judgment will not be considered, and its effect as proof of such indebtedness is not decided, as we are of the opinion that the affidavit for the attachment was sufficient *prima facie* evidence of the existence of the indebtedness. When the sheriff, or other officer, as in this case, justifies the seizure of goods under a writ of attachment valid upon its face, the recitals of indebtedness in the affidavit must be taken as *prima facie* evidence of such indebtedness. Treat v. Dunham, 74 Mich. 114, 41 N. W. 876; Rinchey v. Stryker, 28 N. Y. 45; Hall v. Stryker, 27 N. Y. 596.

It is contended by the appellant that the affidavit is insufficient, in that it does not show when the indebtedness of the National Union Company was to be paid the plaintiff Peterson, or that the amount was due when the affidavit was made. In this the appellant is in error. The complaint is annexed to and made a part of the affidavit. In the sixth paragraph of the complaint it is stated that on December 21, 1892, it was agreed and admitted that there was due and payable to the plaintiff $3,151.90; and it is further alleged in the complaint that all of said amount had been paid, except the sum of $1,053.21, for which sum the plaintiff Peterson demanded judgment. If the

amount specified was found due and payable to the said Peterson on December 21, 1892, and $1,053.21 of which sum was unpaid in June, 1893, that sum would be due and payable. We, conclude, therefore, that the court below committed no error in directing a verdict for the defendant, and the judgment of that court is affirmed.

HANEY, J., took no part in the decision.