FILED

AUG 05 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP Nos. CC-14-1571-DKiBr |
| | CC-14-1572-DKiBr |
| DOMUM LOCIS, LLC, | |
| Debtor. | Bk. No. 14-23301-RK |
| | Adv. Proc. No. 14-01594-RK |
| DOMUM LOCIS, LLC, | |
| Appellant, | |
| vs. | **M E M O R A N D U M**[1] |
| LLOYDS TSB BANK PLC, | |
| Appellee. | |

Argued and Submitted on July 23, 2015
at Pasadena, California

Filed - August 5, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robert N. Kwan, Bankruptcy Judge, Presiding

Appearances:    Howard S. Levine of Cypress LLP argued for Appellant
Domum Locis, LLC; Sean McGrane of Squire Patton Boggs
(US) LLP argued for Appellee Lloyds TSB Bank PLC, now
known as Lloyds Bank PLC.

---

[1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8024-1.

1

Before:  DUNN, KIRSCHER, and BRANDT,[2] Bankruptcy Judges.

Applying the doctrine of *in custodia legis*, the bankruptcy court held that real property scheduled as assets by a chapter 11[3] debtor was not property of its bankruptcy estate pursuant to § 541, because the property was in the possession of a receiver at the time the individual owner of the property transferred the property to the debtor.  The bankruptcy court ruled that because the receivership court never issued orders authorizing the transfers, they were *void ab initio*.  For the reasons stated below, we REVERSE in part but AFFIRM the bankruptcy court's order to allow proceedings to move forward in the California state courts.

## I.  FACTUAL BACKGROUND

Between December 2006 and May 2007, Michael Kilroy borrowed an aggregate amount of approximately $9 million from Lloyds TSB Bank PLC ("Lloyds").  To secure repayment of the loans ("Loans"), Kilroy executed trust deeds in favor of Lloyds with respect to property (collectively, "Properties") he owned in Hermosa Beach, California ("Hermosa Beach Property"), West Hollywood, California ("West Hollywood Property"), and Palm Springs, California ("Palm Springs

_____

[2]  Hon. Philip H. Brandt, United States Bankruptcy Judge for the Western District of Washington, sitting by designation.

[3]  Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

Property"). Mr. Kilroy stopped making interest payments on the Loans in April 2009.

On November 12, 2011, Lloyds filed in the Superior Court of California, County of Los Angeles ("Los Angeles Superior Court") complaints for the appointment of a receiver and for injunctive relief against Mr. Kilroy regarding the Loans secured by the Hermosa Beach Property and the West Hollywood Property. On January 6, 2012, the Los Angeles Superior Court confirmed Robert C. Warren III as receiver ("Receiver") and issued preliminary injunctions against Mr. Kilroy with respect to the Hermosa Beach Property and the West Hollywood Property. As relevant to this appeal, the injunctions both provided that Mr. Kilroy was prohibited from "selling, transferring, disposing, encumbering or concealing the property without a prior court order." Since his appointment, the Receiver has been collecting rent from both the Hermosa Beach Property and the West Hollywood Property.

In April 2012, Lloyds filed in the Superior Court of California, County of Riverside ("Riverside Superior Court") a complaint, inter alia, for injunctive relief, for the appointment of a receiver, and for foreclosure against Mr. Kilroy regarding the Loans secured by the Palm Springs Property. On May 1, 2012, the Riverside Superior Court appointed Mr. Warren as receiver through its "Order Appointment Receiver After Hearing; Temporary Restraining Order; and Order to Show Cause." Because the Riverside Superior Court crossed out all language under the headings "Order to Show Cause" and "Temporary Restraining Order," it is not clear that any

3

restraint was imposed on Mr. Kilroy with respect to the Palm Springs Property.

On July 13, 2012, Mr. Kilroy transferred his interests in the Properties to Domum Locis, LLC ("Domum Locis"), a California limited liability company formed on June 13, 2012, and wholly owned by Mr. Kilroy.[4]

Lloyds amended its complaints in the Los Angeles Superior Court on May 21, 2014, adding (1) Domum Locis as a defendant[5] and (2) claims for relief for breach of contract and for judicial foreclosure. In response, Mr. Kilroy filed cross-complaints against Lloyds for fraud and deceit; negligent misrepresentation; tortious breach of the implied covenant of good faith and fair dealing; breach of contract; violation of the California unfair competition law; violation of Hong Kong law, Section 108 of the Securities and Futures Ordinance Cap 571; and declaratory and injunctive relief. Proceedings escalated from there. At Lloyds' insistence, the Receiver made demand on Mr. Kilroy to vacate his unauthorized residence in one of the units of the West Hollywood Property and to direct Domum Locis to transfer the Properties back to Mr. Kilroy. When Mr. Kilroy refused to comply, the Receiver filed a petition with the Los Angeles Superior Court seeking to effectuate his demands. Lloyds joined in the Receiver's petition and a hearing was

---

[4] Domum Locis contends that the Receiver was provided notice of the transfers within two weeks of the time they were made.

[5] Lloyds did not amend its complaint in the Riverside Superior Court to add Domum Locis as a party.

4

scheduled for July 14, 2014 ("Receivership Hearing").[6]

On July 11, 2014, Domum Locis filed a chapter 11 petition in the Bankruptcy Court for the Central District of California and listed the Properties as assets of its bankruptcy estate having an aggregate value of $14,470,000, approximately $5 million of which it contends is equity. Despite the filing of the petition, the Receivership Hearing was conducted as scheduled, following which the Los Angeles Superior Court entered the following minutes:

> Matter is called for hearing.
>
> The Court finds that the true owner (in this Court's view) of the property in issue, [Michael Joseph Kilroy], transferred title to Domum Locis, LLC in violation of this [court's] order appointing a receiver and in violation of his trust deed and mortgage provisions and is continuing to occupy also in violation of this court's order. Accordingly, if the bankruptcy court lifts its stay re the LLC bankruptcy, in keeping with this court's findings, and permits this court's receiver to remain in possession, the receiver is then to consider an OSC re contempt or other options, including an immediate motion to vacate the transfer of title to the LLC and to undertake discussions with [Mr. Kilroy] re curing or dealing with tax and rent or other similar possible compromises re the OSC re contempt on the possession issue. (Rents might be held in trust or in an escrow of sorts, etc.)

On July 14, 2014, Domum Locis filed (1) a motion for use of cash collateral and adequate protection ("Cash Collateral Motion"), and (2) a motion to approve a lease to Mr. Kilroy of a unit in the West Hollywood Property ("Lease Approval Motion").[7] Lloyds filed an

---

[6] It is not clear in the record that Domum Locis was made a party to or provided notice of the Receivership Hearing.

[7] Lloyds views the Lease Approval Motion as an effort by

(continued...)

5

opposition to both motions.

On July 18, 2014, Lloyds filed a motion ("First RFS Motion") seeking relief from the automatic stay on the basis that the bankruptcy case had been filed in bad faith; the motion also requested that the Receiver be excused from its obligation under § 543 to turn custody of the Properties over to Domum Locis as debtor-in-possession.

On August 18, 2014, Lloyds filed a motion for a protective order seeking to limit the scope of discovery propounded by Domum Locis in connection with the pending motions. A hearing on the motion for protective order was held August 22, 2014 ("August 22 Hearing"). During colloquy at the August 22 Hearing, the bankruptcy court learned that the relief Lloyds hoped to receive through the First RFS Motion was a limited termination of the automatic stay to allow the parties to return to the Los Angeles Superior Court,

---

[7](...continued)
Mr. Kilroy to obtain rights under California landlord/tenant laws that could be used to impede Lloyds' ability to enforce its contractual rights with respect to the Properties. Lloyds has stated on the record that the loan documents expressly prohibit Mr. Kilroy from living at the Properties. At one point in the bankruptcy proceedings, Mr. Kilroy tendered a check for receivership expenses; the notation on the check was that it was for "rent." The bankruptcy court advised the parties that the check would not be deemed a payment of rent, and that Mr. Kilroy could not obtain any legal rights under landlord tenant law when the check was negotiated. The order granting Domum Locis a stay pending these appeals contained a provision that if Domum Locis or Mr. Kilroy tendered any of the payments required under the order with a check that contained a notation that it was for rent, the stay would be dissolved.

specifically to the receivership judge, for an order vacating Mr. Kilroy's transfers of the Properties to Domum Locis in light of the injunction against transfers entered in the receivership proceedings. Because the First RFS Motion did not adequately request that relief, the bankruptcy court required that Lloyds file a new motion for relief from stay and entered a scheduling order providing an opportunity for Domum Locis to respond to it and for an accelerated hearing. Lloyds filed its second motion for relief from the automatic stay ("Second RFS Motion") on August 26, 2014.

The initial hearing on the Second RFS Motion was held September 2, 2014, and continued to September 3, 2014. Again, through colloquy, the bankruptcy court concluded that whether relief from the automatic stay was appropriate under the circumstances depended on a threshold issue that was within its core jurisdiction: whether the Properties constituted property of the bankruptcy estate pursuant to § 541. The bankruptcy court then set a schedule for the determination of that issue through whatever procedural vehicle Lloyds might elect to utilize.

On September 10, 2014, before Lloyds could file its motion to frame the issue, Domum Locis filed an adversary proceeding, the complaint in which asserted two claims for relief: (1) a request for declaratory relief that the Properties were property of the estate; and (2) an objection to Lloyds' claim. On September 19, 2014, Lloyds filed a motion to dismiss the adversary proceeding ("Motion to Dismiss") on the basis that there was no cognizable legal theory that would entitle Domum Locis to a declaration that the Properties

were property of the estate. In support of its motion, Lloyds asserted that the Properties were *in custodia legis* when the receivership orders were entered, such that Mr. Kilroy could not transfer them to Domum Locis without prior permission of either the Los Angeles Superior Court or the Riverside Superior Court, as appropriate, and that any purported transfer was void and of no effect.

A hearing was scheduled for October 22, 2014 ("October 22 Hearing") on the Motion to Dismiss together with the other pending motions that had been deferred pending resolution of the issue of whether the Properties were property of the bankruptcy estate. However, the bankruptcy court determined that because no material facts were in dispute, the motions all could be resolved without an evidentiary hearing. The bankruptcy court took the matters under submission, and on November 17, 2014, issued its "Memorandum Decision On Various Motions of Debtor and Creditor Lloyds TSB Bank PLC" ("Memorandum Decision").[8]

In the Memorandum Decision, the bankruptcy court ruled that, as a matter of California law, the Properties were *in custodia legis* at the time Mr. Kilroy transferred them to Domum Locis and that any transfer of property *in custodia legis* is void. Because the transfers of the Properties to Domum Locis were void, the Properties were not property of the bankruptcy estate.

---

[8] The bankruptcy court amended the Memorandum Decision on December 5, 2014; it is published at In re Domum Locis, LLC, 521 B.R. 661 (Bankr. C.D. Cal. 2014).

8

Based on these conclusions of law, the bankruptcy court granted the Motion to Dismiss. It also granted relief from the automatic stay pursuant § 362(d)(1) to allow the nonbankruptcy litigation in the Los Angeles Superior Court and the Riverside Superior Court to proceed with respect to the Properties. The bankruptcy court further denied Domum Locis's Cash Collateral Motion, which sought to use rental revenue from the Properties, and Lease Approval Motion, which sought to approve the lease to Mr. Kilroy of a unit in the West Hollywood Property. Finally, the bankruptcy court deemed the motion for protective order moot.

An omnibus order effectuating the bankruptcy court's rulings was entered in both the bankruptcy case and in the adversary proceeding on November 25, 2014 ("Omnibus Orders"). Domum Locis timely appealed both Omnibus Orders.[9]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (G) and (O). We have jurisdiction under 28 U.S.C.

---

[9] The bankruptcy case remains pending even though the ruling that the Properties were not property of the estate meant that Domum Locis had no assets. Domum Locis was granted a stay pending appeal, conditioned upon certain payments being made to the receiver to fund operations. Significantly, the tax payment due April 15, 2015, was not made. Lloyds thereafter successfully moved that the stay pending appeal be dissolved. Shortly thereafter Mr. Kilroy filed his own bankruptcy case. Nothing substantive has taken place in the Domum Locis case since the orders on appeal were entered. (The only proceedings have been status hearings and the approval of fees for the attorneys for Domum Locis.) Even after the stay pending appeal was dissolved, there has been no effort by Lloyds or the US Trustee to dismiss the case.

§ 158.

Whether, under California law, the transfers of the Properties, made without authorization by the Los Angeles and Riverside Superior Courts, are *void ab initio*.

Whether "cause" was established to grant relief from the automatic stay.

## IV.  STANDARDS OF REVIEW

We review a bankruptcy court's conclusions of law, including its interpretations of provisions of the Bankruptcy Code and state law, de novo. Rund v. Bank of Am. Corp. (In re EPD Inv. Co., LLC), 523 B.R. 680, 684 (9th Cir. BAP 2015).

"The decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court, and we review such decision under the abuse of discretion standard." Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.), 96 F.3d 346, 351 (9th Cir. 1996).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible or unsupported by evidence in the record. Trafficschool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011); United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We may affirm the bankruptcy court's orders on any basis supported by the record. See ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014); Shanks v. Dressel, 540 F.3d

10

1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

The bankruptcy court found, and the parties are in agreement, that no facts are in dispute. Domum Locis even concedes in its opening brief that the Properties were transferred in violation of certain injunctions contained in the receivership orders.

The primary question before the bankruptcy court was whether those transfers ever were effective. The bankruptcy court, applying the doctrine of *in custodia legis*, concluded they were not. As a consequence, the Properties are not, and never were, property of Domum Locis' bankruptcy estate pursuant to § 541.

Domum Locis asserts that although the transfers violated the receivership orders, they were effective but voidable. Because the transfers had not been avoided as of the petition date, the Properties constituted property of its bankruptcy estate.

Property of the Estate

Section 541 provides that the commencement of a bankruptcy case creates an estate, which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."

> Although the question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case.

McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1078 (9th Cir. 2000), citing Butner v. United States,

11

440 U.S. 48, 54-55 (1979). The bankruptcy court correctly looked to California law to determine whether the Properties were property of the bankruptcy estate, as do we in our de novo review.

Mr. Kilroy's Property Rights

Prior to the appointment of the Receiver, Mr. Kilroy had "sole or several ownership" pursuant to Cal. Civ. Code § 681. Further, his ownership was "absolute," where he had "the absolute dominion over it, and [could] use it or dispose of it according to his pleasure, **subject only to general laws**." Cal. Civ. Code § 679 (emphasis added). Thus, Mr. Kilroy had the right to transfer the Properties without the approval of any other person.

The question posed by the bankruptcy court was "whether Kilroy, as the sole owner, still had the power to transfer the Properties under California law once the court-appointed receiver took over possession of the Properties pursuant to the Los Angeles and Riverside Superior Courts."

1. The receivership statutes govern only a receiver's sale of property.

"Generally, the functions and powers of a receiver are controlled by statute, by order of appointment, and by the court's subsequent orders." City of Santa Monica v. Gonzalez, 43 Cal. 4th 905, 930 (2008). Cal. Code of Civ. Proc. §§ 564-570, as supplemented by the court's orders, govern the appointment of receivers and define their functions and powers. Only two of those provisions are relevant in this appeal. Cal. Code of Civ. Proc. § 564 provides the authority for the state court to appoint a

12

receiver under defined circumstances.  Cal. Code of Civ. Proc. § 568 authorizes the Receiver, "under the control of the court," to take and keep possession of the Properties.  The limited statutory provisions relating to receiverships do not articulate the implications as to property title and ownership once a receiver has been appointed.

2.  <u>Under California law, title to the Properties remained in Mr. Kilroy.</u>

In 1934, the California Supreme Court adopted the analysis of a contemporary treatise on receivers with respect to property ownership:

> A receiver *pendente lite* is a person appointed to take charge of the fund or property to which the receivership extends while the case remains undecided. **The title to the property is not changed by the appointment.  The receiver acquires no title, but only the right of possession as an officer of the court.  The title remains in those in whom it was vested when the appointment was made.**  The object of the appointment is to secure the property pending the litigation, so that it may be appropriated in accordance with the rights of the parties as they may be determined by the judgment of the action.
> ...
> **When a receiver *pendente lite* is appointed, the legal title remains in the individual or corporation whose property is placed in the hands of a receiver.**  However, the receiver has complete dominion over the property, subject to the orders of the court; he holds it for the benefit of others; he has possession.  **All the title, if any, which remains in the individual or corporation is merely the formal legal title which is held by it in trust for the receiver, which title it could be compelled by the court at any time to convey to the receiver for the purposes of the trust.**  The receiver must therefore have the equitable title because the court has imposed on the property an equitable trust.  And this is a qualified equitable title because it is the subject of an interlocutory decree.

North v. Cecil B. DeMille Prods., Inc., 2 Cal. 2d 55, 57-58 (1934)

13

(emphasis added)(quoting Clark on Receivers (2d ed.), Vol. 1, pp. 460 and 463)(internal quotation marks omitted).

That injunctions issued against Mr. Kilroy at the time the Receiver's appointment was confirmed (in the Los Angeles Superior Court at least) reflects the reality that Mr. Kilroy remained the title holder. Without the injunctions, there was no express prohibition against Mr. Kilroy transferring the Properties.[10]

The bankruptcy court ruled that the restriction on Mr. Kilroy's ownership of the Properties imposed by the receivership orders, both the injunctions prohibiting transfers of the Properties and the orders authorizing the Receiver to take possession of the Properties, had the effect of transmuting Mr. Kilroy's ownership of the Properties from "absolute" to "qualified." Cal. Civ. Code § 680 provides:

> The ownership of property is qualified:
> 1. When it is shared with one or more persons;
> 2. When the time of enjoyment is deferred or limited;
> 3. When the use is restricted.

The bankruptcy court cited no authority, nor could we find any, to support a determination that limited provisional remedies can effect a change in title to property. To the contrary, "[i]t is the function of a preliminary injunction to preserve the status quo pending a determination of the action on the merits." King v. Saddleback Junior Coll. Dist., 425 F.2d 426, 427 (9th Cir. 1970)

---

[10] Unlike the bankruptcy court, we read Cal. Code of Civ. Proc. § 568.5 as imposing an absolute restriction against sale only against the Receiver.

14

(citation omitted).

### 3.  The doctrine of *in custodia legis*

The term *in custodia legis* simply means "In the custody of the law."  Black's Law Dict. 10th ed.  "The phrase is traditionally used in reference to property taken into the court's charge during pending litigation over it."  Id.  As observed by the Ninth Circuit, "California courts have held that the doctrine of '"[c]ustodia legis" is a legal principle evolved to prevent outside interference with a court's jurisdiction to deal with property in its custody, it is not a principle designed to govern the court's dispositional power over such property.'"  U.S. v. Van Cauwenberghe, 934 F.2d 1048, 1062 (9th Cir. 1991) (quoting People v. Super. Court, 28 Cal. App. 3d 600, 612 (1972)).  A primary example of its use is when a court officer has possession of property, and an outside party attempts to use legal process to attach it.  For example, in Withington v. Shay, 47 Cal. App. 2d 68, 73-75 (1941), in an action for judicial foreclosure of a mechanic's lien, the sheriff, under court supervision, held surplus proceeds from a sale of the property.  The appellate court held that those proceeds were not subject to a judgment levy because they were held *in custodia legis* and therefore were immune from attachment.

The bankruptcy court determined that under California law, the Properties were in the possession of the Receiver as an agent of the court, and therefore, the doctrine of *in custodia legis* applied to void any action in contravention of the court's dominion over the Properties.  In support of its conclusion, the bankruptcy court

15

quoted the California Supreme Court's broad language in <u>Pacific Ry.</u> <u>Co. v. Wade</u>, 91 Cal. 449, 455 (1891).

> [A receiver's] possession is the possession of the court, for the benefit of all persons interested, whether named as parties in the action or not, and it cannot be disturbed without the consent of the court. No one claiming a right paramount to that of the receiver can assert it in any action without the permission of the court. **No sale can take place, no debt can be paid, no contract can be made, which does not receive the sanction of the court**. (emphasis added).

As noted by Domum Locis, however, this quoted language is insufficient to support the premise that **no action** is effective with respect to receivership properties without approval of the court. The court was simply emphasizing the role of a receiver for a corporation. "The receiver, with permission of the court, can do anything the corporation might have done to make the most out of the assets in his hands. . . ." <u>Id.</u>

The bankruptcy court's interpretation of and application of the doctrine of *in custodia legis* is overly broad in the context of the receivership proceedings over the Properties. The bankruptcy court extended the implications of the doctrine of *in custodia legis* notwithstanding its acknowledgment that none of the authorities upon which it relied were directly analogous to the situation before it. <u>See</u> <u>In re Domum Locis, LLC</u>, 521 B.R. at 674. Further, the bankruptcy court drew a bright line that the mere existence of a receivership and its related orders, including the injunctions, preclude a person or entity subject to the injunction from

16

transferring title.[11]

We note for comparison purposes that California has enacted legislation to provide that in certain legal proceedings, including those in which a court agent has possession of property subject to administration by the court, a sale is not sufficient to transfer title without a court's order confirming the sale. See, e.g., Cal. Probate Code § 10260 (sales to be reported to and confirmed by court before title passes). Clearly, this language would render any purported transfer void in the absence of a court's order confirming it.

Based on the foregoing, we cannot conclude that the mere facts that the receivership existed and that the receivership orders, including the injunctions, had been entered, render the transfers of the Properties to Domum Locis void as a matter of law. It is within the jurisdiction of the receivership court to vacate (or even ratify in circumstances it might deem appropriate) the transfers that took place in contravention of its orders.[12] Because Mr. Kilroy held

_____

[11] This position is inconsistent with California law as articulated in Mercantile Trust Co. of San Francisco v. Sunset Rd. Oil Co., 50 Cal. App. 485, 498-499 (1920). The bankruptcy court characterized the reasoning of Mercantile Trust as "unsound." In re Domum Locis, LLC, 521 B.R. at 676.

[12] We further note, as pointed out by Domum Locis, that where an injunction exists and has been violated, the remedy of contempt is available. However, contempt is only appropriate when the court issuing the injunction has made factual findings. "The standard for finding a party in civil contempt is well settled: 'The moving party has the burden of showing by clear and convincing evidence
(continued...)

17

title to the Properties, he had the ability to transfer that title (but not possession). That the transfers were in violation of court orders and could be vacated did not change that fact. We conclude that Domum Locis held title to the Properties on the petition date. Accordingly, they constitute property of the bankruptcy estate.

The Omnibus Orders on Appeal

Having concluded that the Properties were not property of Domum Locis' bankruptcy estate, the bankruptcy court granted the Dismissal Motion and the Second RFS Motion, but denied the other pending motions that were encompassed by the Omnibus Orders. In light of our determination that the legal conclusion of the bankruptcy court was erroneous, we now turn to the other matters dealt with in the Omnibus Orders. Neither party has raised issues with respect to the bankruptcy court's dispositions of the other pending motions, and because no factual determinations were made in ruling on the Cash Collateral Motion, the Lease Approval Motion, the motion for protective order, and the First RFS Motion, there is an incomplete record for our review.

As to the Second RFS Motion, while its disposition similarly was premised on the bankruptcy court's conclusion that the Properties were not property of the estate, we affirm. As we discussed above, at the time the bankruptcy petition was filed,

[12](...continued)
that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.'" FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (citations omitted).

18

matters were pending before the Los Angeles Superior Court to unwind the transfers as to the West Hollywood Property and the Hermosa Beach Property.

Allowing the California state courts in the receivership proceedings to determine whether the transfers of the Properties should be voided will allow them to resolve completely difficult and unsettled issues of California state law. Affirming relief from stay also will serve judicial economy and allow for the most expeditious and economical determination of the issues between the parties to the appeal. It also potentially will allow for efficient resolution of issues regarding the transfers of the Properties in Mr. Kilroy's individual chapter 11 case. Our review of the docket in Domum Locis' chapter 11 case indicates that nothing of substance has occurred in the bankruptcy case since the Omnibus Orders were entered.

In these circumstances, the record on appeal clearly establishes "cause" under § 362(d)(1) to support entry of an order granting relief from stay to allow the nonbankruptcy litigation in the actions before the Los Angeles and Riverside Superior Courts with respect to the Properties to proceed under Ninth Circuit standards. See, e.g., Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166-67 (9th Cir. 1990); Packerland Packing Co., Inc. v. Griffith Brokerage Co. (In re Kemble), 776 F.2d 802, 807 (9th Cir. 1985); Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.), 311 B.R. 551, 556-60 (Bankr. C.D. Cal. 2004).

19

## VI.  CONCLUSION

The bankruptcy court erred in concluding as a matter of law that the transfers of the Properties were void.

We AFFIRM IN PART the Omnibus Orders.  Notwithstanding that the bankruptcy court granted the Second RFS Motion based on its erroneous conclusion of law, there is otherwise adequate support in the record to affirm the Omnibus Orders with respect to the Second RFS Motion.

With that limited exception, we REVERSE.